v.

**STEAK N SHAKE OPERATIONS, INC., Appellee**

**No. 05-14-00649-CV**

Court of Appeals of Texas, Dallas.

Opinion Filed August 30, 2017

Supplemental Opinion on Rehearing October 27, 2017

Christopher L. Kurzner, James F. Parker III, Kurzner, PC, Matthew R. McCarley, Fears Nachawati PLLC, Dallas, TX, Warren K. Paxton Jr., Law Office of Ken Paxton, McKinney TX, for Appellee.

Matthew J. Kita, Attorney at Law, Dallas, TX, for Appellant.

Before Justices Francis, Evans, and Stoddart

## OPINION ON REMAND

Opinion by Justice Francis

B.C. appeals the trial court's take-nothing summary judgment on her common-law assault claim against her former employer, Steak N Shake Operations, Inc. (SNS). On original submission, this Court concluded B.C.'s claim was barred as a matter of law by the Texas Commission on Human Rights Act.[1] *B.C. v. Steak N Shake Operations, Inc.*, 461 S.W.3d 928, 928 (Tex. App.—Dallas 2015). The Texas Supreme Court reversed our decision, concluding the claim was not preempted by the TCHRA, and remanded the case for us to consider the remaining issues. 512 S.W.3d 276, 285 (Tex. 2017). The issues that remain on appeal are (1) whether, under its traditional motion for summary judgment, SNS established as a matter of law that B.C.'s assault claim fits within a traditional exception to the Texas Workers' Compensation Act (TWCA) and (2) whether, under the no-evidence motion, B.C. produced more than a scintilla of evidence on each element of her claim. Because B.C. failed to file a timely response to the no-evidence motion, and the record does not show the trial court considered the late-filed response, we conclude the trial court properly granted summary judgment in favor of SNS. Accordingly, we affirm the trial court's judgment.

The supreme court summarized the facts of this case at length in its opinion, so we need not repeat them here. *See id.* at 277–79. SNS filed a combined traditional motion and no-evidence motion for summary judgment which was granted by the trial court. We review a trial court's granting of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we must affirm summary judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

No-evidence and traditional grounds for summary judgment may be combined in a single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *Coleman v. Prospere*, 510 S.W.3d 516, 518 (Tex. App.—Dallas 2014, no pet.). The substance of the motion and not its form or the attachment of evidence determines whether the motion is a no-evidence, traditional, or combined motion. *Binur*, 135 S.W.3d at 650–51; *Coleman*, 510 S.W.3d at 518. When a party files both a no-evidence and a traditional motion for summary judgment, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict and is governed by the standards of Texas Rule of Civil Procedure 166a(i). *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The motion must specifically state which elements of the nonmovant's claims lack supporting evidence. TEX. R. CIV. P. 166a(i); *Jose Fuentes Co., Inc. v. Alfaro*, 418 S.W.3d 280, 283 (Tex. App.—Dallas 2013, pet. denied) (en banc). A no-evidence motion that only generally challenges the sufficiency of the nonmovant's case is fundamentally defective and cannot support summary judgment as a matter of law. *Id.* But, when a movant has filed a motion that identifies the elements for which it contends no supporting evidence exists, in a form that is neither conclusory nor a general no-evidence challenge, summary judgment must be rendered absent a timely and legally adequate response by the nonmovant.

1. TEX. LAB. CODE ANN. §§ 21.001–.556 (West 2015 & Supp. 2016).

*Landers v. State Farm Lloyds*, 257 S.W.3d 740, 746 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (op. on reh'g).

▇ In this case, SNS's no-evidence motion identified the elements of assault and asserted there is no evidence of any of these elements on either a direct or vicarious liability theory. B.C. has not argued the motion was legally insufficient. Rather, she argues she presented sufficient evidence on each element of her claim to defeat the motion and directs us to evidence contained in her response. SNS argues we cannot consider B.C.'s evidence because the response was not filed timely.

▇ A response to a motion for summary judgment, including opposing summary judgment evidence, may be filed no later than the seventh day before the date of the hearing "[e]xcept on leave of court." Tex. R. Civ. P. 166a(c); *see also Landers*, 257 S.W.3d at 745. If the response is late, the record must contain an affirmative indication that the trial court permitted the late filing or the response is a nullity. *K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex. App.—San Antonio 2002, no pet.). If the record contains nothing indicating the trial court considered a late-filed response, we presume the trial court did not consider it, and the response will not be considered on appeal. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996).

Here, the summary judgment hearing was held on January 22, 2014, and B.C.'s response to the motion for summary judgment was filed six days earlier, on January 16, 2014. Consequently, her response was not timely, and SNS objected to the trial court's consideration of B.C.'s evidence on that basis. Nevertheless, B.C. argues the following language of the order granting

summary judgment contains an "affirmative indication" that the trial court considered her evidence: "After considering the pleadings, evidence, and arguments of counsel, the Court finds that the Motion should be granted." She suggests the word "evidence" shows the trial court considered all evidence, including her late-filed evidence. But B.C. has not cited, and we have not found, an opinion concluding a trial court's statement that it considered "evidence" was an adequate indication in the record that the court considered late-filed responsive evidence. *See Neimes v. Ta*, 985 S.W.2d 132, 138 (Tex. App.—San Antonio 1998, pet. dism'd by agr.) (explaining trial court may memorialize its permission by separate order, a recital in summary judgment order, or oral ruling contained in reporter's record of hearing); *see generally* Judge David Hittner & Lynne Liberatto, *Summary Judgments in Texas: State and Federal Practice*, 52 Hous. L. Rev. 773, 803 (2015).

▇ The record shows SNS moved for traditional and no-evidence summary judgment in one document and filed a 226-page appendix of evidence to support its traditional motion. Thus, the trial court's statement that it considered the evidence indicates nothing more than the trial court considered SNS's appendix of evidence in conjunction with the traditional motion. We could reach a different conclusion had SNS filed only a no-evidence motion without any supporting evidence or if the trial court stated that it considered the response to SNS's motion. Neither, however, is the case. On the record before us, we cannot conclude the trial court's order contained any "affirmative indication" that it considered B.C.'s late-filed evidence or granted B.C. leave to late-file her response and evidence.[2] Accordingly, we presume

---

**2.** To the extent B.C. relies on the word

"pleadings" to encompass her response, the

the trial court did not consider her response or evidence and exclude them from our review. *Benchmark Bank*, 919 S.W.2d at 663.

Because B.C.'s response to the no-evidence motion was untimely and the record does not contain any indication the trial court granted leave for the late filing or considered the response in rendering its decision, B.C. failed to meet her burden under rule 166a(i) to affirmatively raise an issue of fact on the challenged elements of her claim. The absence of a timely and legally adequate response to the no-evidence motion required the trial court to grant summary judgment in favor of SNS. *See Landers*, 257 S.W.3d at 746.

The dissent in this case reaches a different result, concluding the evidence presented by SNS in support of its traditional motion for summary judgment rendered its no-evidence motion "legally defective or insufficient." Although B.C. does not make this argument, the dissent cites *Binur v. Jacobo* for the proposition that SNS's evidence must be examined to determine if it creates a fact issue precluding no-evidence summary judgment even though B.C. did not file a timely response. *See Binur*, 135 S.W.3d at 651. We conclude, as other courts have, that *Binur* should not be read this broadly. *See Gallien v. Goose Creek Consol. Indep. Sch. Dist.*, No. 14-11-00938-CV, 2013 WL 1141953, at *4 (Tex. App.—Houston [14th Dist.] Mar. 19, 2013, pet. denied) (mem. op.); *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *4–5, (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.).

◼ In *Binur*, the supreme court disapproved appellate court decisions that disregarded or recharacterized motions for no-evidence summary judgment if they attached evidence. *See Binur*, 135 S.W.3d at 651. In doing so, the court stated that "if a motion brought solely under subsection (i) attaches evidence, that evidence should not be considered unless it creates a fact question." *Id.* The court said nothing in *Binur* about considering evidence submitted as part of a combined motion for traditional and no-evidence summary judgment when determining the propriety of the no-evidence motion. *See Dyer*, 2012 WL 335858, at *4. More importantly, the court said nothing that would indicate the nonmovant was relieved of her burden under rule 166a(i) to timely respond to the no-evidence motion and direct the court to the evidence she believes creates a fact issue. Although the nonmovant may not be required to re-submit the evidence already proffered by the movant, she must, at a minimum, file a timely response identifying the portions of the movant's evidence she is relying on to show a fact issue exists. *Cf. Campbell v. Mortg. Elec. Registration Sys. Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at * 4 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.)

The dissent contends the evidence creating a fact issue in this case was pointed out to the trial court by the movant as part of its motion for traditional summary judgment and this was sufficient. This conclusion does not take into account the fact that the trial court, in considering a combined traditional and no-evidence summary judgment motion, should first address the no-evidence motion. *Cf. Ridgway*, 135 S.W.3d at 600; *Blackard v. Fairview Farms Land Co., Ltd.*, 346 S.W.3d 861, 867

law is clear that a summary judgment response is not a pleading. *See In re S.A.P.*, 156 S.W.3d 574, 576 n.3 (Tex. 2005); *K.W. Ministries, Inc. v. Auction Credit Enters., LLC*, No. 05-14-01392-CV, 2016 WL 1085227, at *3 (Tex. App.—Dallas Mar. 21, 2016, no pet.) (mem. op.).

(Tex. App.—Dallas 2011, no pet.). If the nonmovant fails to adequately respond to the no-evidence motion, as was the case here, the trial court need never reach the traditional motion and, therefore, never examine the evidence "pointed to" by the movant.

■ Additionally, even if the movant identifies evidence that arguably creates a fact issue, it is not appropriate for the court to make those arguments on behalf of the nonmovant and deny the motion for no-evidence summary judgment on that basis. It is the nonmovant's burden under rule 166a(i) to identify evidence and explain why it demonstrates that a fact issue exists. Requiring the court to independently determine whether the movant's evidence supports the nonmovant puts the court in the improper position of advocate for the nonmovant.

We recognize, as other courts have, the apparent injustice in allowing a no-evidence summary judgment to stand when "the record discloses not only that evidence exists to support the challenged element, but that the evidence was before the trial court." See Dyer, 2012 WL 335858 at *3. But both the language of the summary judgment rule, and the impropriety of asking the trial court to take on the nonmovant's burden of identifying fact issues, dictates the result. Id. We conclude the trial court did not err in granting a no-evidence summary judgment in favor of SNS. Our disposition of this issue makes it unnecessary to address B.C.'s other arguments.

We affirm the trial court's judgment.

Evans, J., dissenting.

DAVID EVANS, JUSTICE, dissenting.

In this appeal, because the nonmovant did not timely respond in the trial court we must decide whether a no-evidence ground for summary judgment is legally defective because the movant's factual summary retold, cited, and provided the nonmovant's testimony contradicting the motion's assertion that there was no such evidence and further directly provided the responsive evidence. We must then decide whether the evidence cited by the movant for its traditional motion actually identified a genuine issue of material fact. I would decide both questions in favor of the nonmovant and reverse in part and affirm in part. Because the majority opinion decides differently, I dissent.

### PROCEDURAL POSTURE

The supreme court summarized the facts of this case at length, so I do not repeat them here. See B.C. v. Steak N Shake Operations, Inc., 512 S.W.3d 276, 277–79 (2017). The supreme court's decision that B.C.'s assault claim was not covered by TCHRA was based in part on B.C.'s allegation that the assault was committed by a vice-principal:

> Here, B.C. claims that Steak N Shake is liable because one of its *alleged* vice principals committed an assault. Essentially, B.C. alleges that Steak N Shake steps into the shoes of the assailant and is, therefore, directly liable for her injury.

B.C., 512 S.W.3d at 281 (emphasis added). But the supreme court did not decide whether the allegation survived summary judgment. See id. at 281, n.3 (indicating B.C. and SNS's dispute about whether Ventura was a vice-principal is part of issues on remand to be decided by this Court). I, therefore, include in my analysis below whether there is any factual support for B.C.'s allegation that Ventura was a vice-principal of SNS at the time of the alleged assault.

A second important aspect of the procedural posture of this case is the no-evi-

dence ground for summary judgment. SNS's motion informed the trial court:

> After lighting their cigarettes and smoking them silently while staring at each other for a minute or two, Plaintiff testified that Ventura moved toward her and attempted to kiss her, pushing her up against the sink. [Citation to B.C.'s deposition testimony provided in an appendix.] When she refused, Ventura attempted to remove her pants and apron and lift his hand up her shirt until she pushed him away. [Citation to B.C.'s deposition testimony provided in an appendix.] Plaintiff also testified that Ventura then exposed himself and tried to force her head toward his crotch, apparently in an effort to induce Plaintiff to perform oral sex on him, but that she pushed him to the ground and walked out the door. [Citation to B.C.'s deposition testimony provided in an appendix.] According to Plaintiff, the encounter lasted 15 to 20 minutes. [Citation to B.C.'s deposition testimony provided in an appendix.]

These statements and citation to the appendix of evidence are not contained in the traditional motion section, but in the general, factual section that introduced both the traditional and no-evidence grounds sections. After the traditional grounds section, the no-evidence grounds first challenged the assault cause of action asserting the following:

> To prove a cause of action for assault by infliction of bodily injury, Plaintiff must prove (1) the defendant acted intentionally, knowingly, or recklessly; (2) the defendant made contact with the plaintiff's person; and (3) the defendant's contact caused bodily injury to the plaintiff. .... As to any claim against SNS for direct liability for assault/sexual assault, there is no evidence of any of these elements.

(Authorities in footnote and text omitted). The no-evidence motion then challenged in detail SNS's liability based on B.C.'s alternatively pleaded theory of respondeat superior.

### Analysis

### *Content of Summary Judgment Record and B.C.'s Legal Sufficiency Argument*

I begin by addressing SNS's argument that B.C. has waived her appellate arguments because she filed her summary judgment response and evidence late and did not seek or obtain leave for consideration of her late filing. For the following reasons, I conclude B.C.'s late filing precludes our consideration of her response and evidence. But we may consider B.C.'s appellate issues that assert the legal insufficiency of SNS's motion for summary judgment.

I conclude for the reasons stated in the majority opinion that B.C. filed her response and evidence one day late and that the trial court did not indicate in a written order that it granted leave or considered her response and evidence.

SNS further requests we consider as waived all of B.C.'s appellate arguments as to both the traditional and no-evidence grounds of summary judgment because they were not made in the trial court. B.C. argues there was a genuine issue of material fact precluding the trial court from granting the traditional ground for summary judgment and the trial court erred when it granted the no-evidence ground citing the same testimony by B.C. as the movant cited. So SNS challenges that B.C.'s appellate arguments do not argue the legal sufficiency of SNS's summary judgment grounds.

As regards a motion for summary judgment on traditional grounds, "[t]he non-movant has no burden to respond to a

summary judgment motion unless the movant conclusively establishes its cause of action or defense." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). In that situation, the nonmovant is limited on appeal to arguing the legal sufficiency of the movant's grounds:

> [S]ummary judgments must stand or fall on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right. *Clear Creek*, 589 S.W.2d at 678. If a non-movant fails to present any issues in its response or answer, the movant's right is not established and the movant must still establish its entitlement to summary judgment. The effect of such a failure is that the nonmovant is limited on appeal to arguing the legal sufficiency of the grounds presented by the movant. *Id.* at 678.

*McConnell .v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) (underline added). Thus, the supreme court equated "legal sufficiency of the grounds presented" with "the movant must still establish its entitlement to summary judgment." *Id.*; *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (same). Thus, "[s]ummary judgments must stand on their own merits. Accordingly, on appeal, the nonmovant need not have answered or responded to the motion to contend that the movant's summary judgment proof is insufficient as a matter of law to support [a traditional] summary judgment." *Rhone-Poulenc*, 997 S.W.2d at 223. So B.C.'s challenge of the summary judgment on traditional grounds because there was evidence that created a genuine issue of material fact is a challenge that SNS did not establish its entitlement to summary judgment; that is a challenge to the legal sufficiency of the grounds presented.

Regarding SNS's no-evidence ground, when evidence is attached to a motion for summary judgment that combines traditional and no-evidence grounds, the movant's evidence may be considered if it creates a fact issue. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). A motion filed in accordance with rule 166a(i) shifts the burden to the nonmovant to bring forth evidence that raises a fact issue on the challenged element. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see also* Tex. R. Civ. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). But "[t]his Court has held that the legal sufficiency of a no-evidence motion for summary judgment may be challenged for the first time on appeal in the same manner as a challenge to the legal sufficiency of a traditional motion for summary judgment." *Jose Fuentes Co., v. Alfaro*, 418 S.W.3d 280, 287 (Tex. App.—Dallas 2013, pet. denied) (en banc). Accordingly, a nonmovant may argue that there was evidence before the trial court such that the granting of the no-evidence ground was error. *See McConnell*, 858 S.W.2d at 343 (traditional ground). A motion that explains, cites, and provides to the trial court evidence directly supporting the challenged elements yet also states in the no-evidence grounds that such evidence does not exist is a contradictory motion making it legally defective or insufficient. Such a motion does not shift the burden to the nonmovant. Moreover, in *Binur* the supreme court did not limit the use of the movant's evidence that creates a fact issue to only those situations where the nonmovant points out the existence of that evidence to the trial court. *See Binur*, 135 S.W.3d at 651. The critical issue for trial courts to rule on no-evidence motions is that the evidence creating a factual issue

be specifically pointed out to the trial court.

Where a movant provides but does not point out to the trial court the conflicting evidence, there is no contradiction, no legal defect, in the no-evidence motion. In such situations, the nonmovant must point out to the trial court the evidence supplied by the movant that is more than a scintilla of evidence. *See Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *3 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.) (in absence of timely response and where movant provided but did not point out to trial court evidence contradicting no-evidence grounds of combined motion for summary judgment, nonmovant cannot argue for first time on appeal existence of evidence filed by movant). To the extent the *Dyer* court decided the nonmovant must be the party to point out the evidence to the trial court, I disagree so long as the evidence is provided and pointed out to the trial court by either party. Where a movant files a motion for summary judgment combining traditional grounds with no-evidence grounds and retells, cites, and provides the trial court with evidence directly challenged as not existing in the no-evidence grounds, such a motion does not establish the movant's entitlement to summary judgment. *See generally McConnell*, 858 S.W.2d at 343 (traditional ground); *Binur*, 135 S.W.3d at 651 (no-evidence ground in combined motion).

I do not think we can ignore the contradiction in SNS's motion for summary judgment any more than the trial court could when it read the motion merely because an appellate court generally would first consider a complaint about the granting of the no-evidence grounds in the motion. Accordingly, I would reject SNS's argument that B.C.'s appellate arguments are necessarily waived as a result of filing her summary judgment response one day late.

### Summary Judgment Standards

We review de novo a trial court's grant of a motion for summary judgment. *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012). We must affirm a summary judgment when a trial court does not specify the grounds for its ruling if any of the grounds in the motion are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

To review a no-evidence ground for summary judgment, we consider the evidence in the light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We will affirm when

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

We review a traditional ground for summary judgment to determine whether the movant established that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We affirm the summary judgment if any of the theories presented to the court and preserved for review are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

When as here a trial court grants a summary judgment on traditional and no-evidence grounds, we usually review the evidence using the no-evidence standard first. *Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 782 (Tex. App.—Dallas 2013, no pet.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)); *see also Merriman*, 407 S.W.3d at 248.

### No-Evidence Grounds: Assault and Respondeat Superior Liability for Assault

In its motion for no-evidence summary judgment, SNS contends B.C. has no evidence of any of the three elements needed to establish an assault claim directly against SNS. As described above, in SNS's lengthy factual section of its motion for summary judgment and evidentiary appendix SNS provided B.C.'s testimony about Ventura assaulting her in the restaurant bathroom including each element of assault. (SNS stated in a footnote that it submitted her "testimony supporting her allegations as true solely for purposes of this motion."). B.C. complains on appeal that her deposition testimony is more than a scintilla of evidence of the assault so it was error for the trial court to grant no-evidence summary judgment on the assault claim. Even though B.C. did not characterize her appellate complaint as challenging the legal sufficiency of SNS's motion, because B.C. challenges that the no-evidence motion does not establish entitlement to summary judgment, that is a challenge to the legal sufficiency of the motion. *See McConnell*, 858 S.W.2d at 343; *Clear Creek Basin Auth.*, 589 S.W.2d at 678; *Alfaro*, 418 S.W.3d at 287. B.C. and SNS point to exactly the same evidence: B.C. points to her testimony attached to her late response and in its motion SNS pointed to B.C.'s testimony SNS attached to its motion for summary judgment. B.C. is correct that the no-evidence ground is legally insufficient as to the assault elements because SNS explained, cited, and provided to the trial court B.C.'s testimony about the assault. This contradicted SNS's no-evidence ground. The trial court, therefore, erred when it granted no-evidence summary judgment on B.C.'s assault claim.

After challenging the assault elements, SNS challenged its vicarious liability for Ventura's conduct, a theory B.C. had pleaded. SNS did not assert in its no-evidence grounds that B.C. did not have any evidence of vice-principal liability or that Ventura was not a vice-principal. But in her brief, B.C. fails to challenge the summary judgment on vicarious liability asserted in SNS's no-evidence motion. Instead, B.C. addresses vice-principal liability by incorporating her appellate arguments as to the traditional grounds for summary judgment. As regards vicarious liability, B.C.'s brief presents nothing for us to review. The trial court, therefore, did not err in granting no-evidence summary judgment that SNS is not vicariously liable for Ventura's alleged assault on B.C.

### Applicable Law Regarding Vice-Principal Status

B.C. asserts there was a genuine issue of material fact in the traditional ground for summary judgment remaining for our review. SNS argues the supreme court changed the standard for determining which corporate agents are vice-principals to add the requirements that a vice-principal must be a controlling equity owner or alter ego of the corporation. *See Medina v. Herrera*, 927 S.W.2d 597 (Tex. 1996) (summarizing history of intentional tort exception to workers' compensation) (citing *Middleton v. Tex. Power & Light Co.*, 108 Tex. 96, 185 S.W. 556 (1916) and *Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex. Civ. App.—Dallas 1951, writ ref'd)). SNS urges we should apply the discussion in *Medina* of Professor Larson's view that "the intentional tort exception, which is generally

recognized in other jurisdictions, should apply to corporate employers only where the 'assailant is, by virtue of control or ownership, in effect the alter ego of the corporation,' or where the corporate employer specifically authorizes the assault." *Medina*, 927 S.W.2d at 601 (citing 2A LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 68.00, 68.21 (1990)). But the supreme court in *Medina* expressly declined to decide that issue stating, "While this issue is important, *we decline to resolve it today....*" *Id.* (emphasis added). Instead, the supreme court resolved *Medina* based on the worker's acceptance of compensation benefits resulting in preclusion of his suit against his employer for a claim that would exclude TWCA benefits. *Id.* So *Medina* is not authority for SNS's argument.

In its opinion in this case in a footnote comment, the supreme court stated the parties' dispute about Ventura's vice-principal status would be resolved on remand quoting *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999): "When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself." *B.C.*, 512 S.W.3d at 281 n.3. This quotation is taken from the paragraph in *GTE Southwest* where the supreme court stated:

> Moreover, regardless of whether Shields acted within the scope of his employment, his status as a vice-principal of the corporation is sufficient to impute liability to GTE with regard to his actions taken in the workplace. *Cf. Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391–92 (Tex. 1997) (corporations may be liable for punitive damages for torts committed by vice-principals). Corporations can act only through their agents. *Id.* at 391; *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 402 (1934), *disapproved in part on other grounds by Wright v. Gifford–Hill &*

*Co.*, 725 S.W.2d 712, 714 (Tex. 1987). When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself. *Fort Worth Elevators*, 70 S.W.2d at 406. <u>A vice-principal represents the corporation in its corporate capacity, and includes persons who have authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business.</u> *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex. 1998).

*Id.* (underline added). In both *Mobil Oil* and *Fort Worth Elevators*—both of which are cited by *GTE Southwest*—the supreme court enumerated those who are a corporation's vice-principal as:

> "Vice principal" encompasses: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom the master has confided the management of the whole or a department or a division of the business.

*Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex. 1998); *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 403 (1934), *disapproved in part on other grounds by Wright v. Gifford-Hill & Co.*, 725 S.W.2d 712, 714 (Tex. 1987). SNS has not cited a more recent supreme court authority overruling the supreme court's line of opinions that have used the same test since 1934 for classes of corporate agents who are vice-principals whose acts must be the acts of the corporation, instead of the act of a servant. Therefore, I reject SNS's argument that we should change the vice-principal test by adding the requirement of equity ownership or

sufficient identity with the corporation to constitute alter ego.[1]

It is important to take note of the types of job positions and authority that courts have found to meet the vice-principal test with attention to the two bases B.C. argues: (1) Ventura had authority to employ, direct, and discharge employees of SNS and (2) Ventura was the manager of a department or division of SNS, namely, the restaurant at which B.C. worked. In *GTE Southwest*, the supreme court affirmed a jury award of exemplary damages based on the jury's finding that the corporate employee "was the highest ranking management person stationed at the Nash facility, and that [he] had authority to employ, direct, and discharge employees." *GTE Sw.*, 998 S.W.2d at 618. Citing *GTE Southwest* and the same two tests on which B.C. relies, the supreme court did not disturb a finding that a car dealership's general manager, comptroller, and used car sales manager were vice-principals whose maliciously defamatory statements were the statements of the business for which they worked. *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009). Following the same factors, this Court decided the acting manager of a bar-restaurant who verbally encouraged patrons to physically attack another bar patron was a vice-principal whose conduct was that of the business entity. *Then W., Inc./Bait House, Inc. v.*

*Sorrells*, No. 05-01-01874-CV, 2002 WL 1397477, at *6 (Tex. App.—Dallas June 28, 2002, no pet.) (not designated for publication). The Corpus Christi Court of Appeals determined that a person "who writes checks and hires and fires employees" is a vice-principal whose statements are those of her employer. *Fontenot Petro-Chem & Marine Servs., Inc. v. LaBono*, 993 S.W.2d 455, 460 (Tex. App.—Corpus Christi 1999, pet. denied). The Texarkana Court of Appeals concluded a trucking company's "terminal manager with the right to direct and discharge" employees was a vice-principal. *Rainbow Exp., Inc. v. Unkenholz*, 780 S.W.2d 427, 431 (Tex. App.—Texarkana 1989, writ denied). This Court concluded the head of store security was a vice-principal because as the head of security he was entrusted with the management of the security department or division with wide discretion under the store's directive. *Treasure City v. Strange*, 620 S.W.2d 811, 814 (Tex. Civ. App.—Dallas 1981, no writ). In contrast to these jobs and positions, an hourly wage employee of Walmart with no authority to speak on behalf of Walmart was not a vice-principal and her defamatory statements were not the statements of Walmart. *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 289 (Tex. App.—Corpus Christi 2000, pet. denied). So examination of the summary judgment record should use these standards to determine whether

---

1. It would be inappropriate for this Court to change the vice-principal standard based on the implication from dicta in an opinion that was decided on another basis because doing so is the prerogative of the supreme court. *See In re Fort Apache Energy, Inc.*, 482 S.W.3d 667, 669 (Tex. App.—Dallas 2015) (orig. proceeding) ("It is the prerogative of the supreme court to overrule its own decisions if it determines the reasons have been rejected by another line of decisions." (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Owens Corning v. Carter*, 997 S.W.2d 560, 571 (Tex. 1999))). If SNS is correct that the supreme court will modify the vice-principal test to include a requirement of significant equity ownership or alter ego status as the dicta in *Medina* may indicate, then SNS is correct that there is no genuine issue of material fact in this record that Ventura does not meet those additional requirements. In that event, the trial court did not err in granting summary judgment for SNS on B.C.'s remaining claim of assault. (This appears to be the core argument of SNS's motion for summary judgment).

there is a genuine issue of material fact as to whether Ventura had authority to employ, fire, and direct employees at the restaurant and whether he managed SNS's restaurant at which B.C. worked.

### Summary Judgment Record Regarding Vice-Principal Status of Ventura

SNS argues B.C.'s assault claim falls within the exclusive remedy of the TWCA unless B.C. has evidence that intentional injuries are "directly attributable to the employer." B.C. argues that her assault claim does not come within the scope of the TWCA because Ventura was a vice-principal of SNS which is a recognized exception to the application of the TWCA.

SNS informed the trial court it rehired Ventura as a Restaurant Manager in November 2010 at the McKinney SNS, citing attached evidence. SNS further stated a month before the incident, Ventura was transferred to the Frisco store where he was a Restaurant Manager and reported to a general manager citing attached evidence. SNS provided the testimony of its human relations manager, Stephanie Chiles-Beauvais, regarding whether Ventura was able to hire and fire associates. In her testimony, Chiles-Beauvais read into the record from a document SNS had Ventura sign that described his position as Restaurant Manager with these attributes: "Has the authority to terminate associates in accordance with Steak 'n Shake policies," "Participates in the recruiting, interviewing, hiring and training of hourly associates," and "Recommends associates for promotion or other changes in job status." (It is these statements in this documentation on which B.C. primarily relies to argue there is a genuine issue of material fact). Chiles-Beauvais explained the document was for compliance with the Fair Labor Standards Act including the "key categories that make the management position salary exempt from overtime." Nev-

ertheless, Chiles-Beauvais flatly denied Ventura had the authority to fire an associate. SNS also pointed out to the trial court that B.C. testified on the night of the assault Ventura was the sole onsite manager at the restaurant and provided that testimony to the trial court in an appendix.

The evidence in the summary judgment record presented by SNS amounts to more than a scintilla of evidence that Ventura had the authority to fire associates and participate in the hiring and promotion of associates as documented in SNS's records for government labor law compliance. He was the sole manager onsite and while managing the restaurant, according to B.C., he assaulted her in the employee restroom. This evidence creates a genuine issue of material fact regarding whether Ventura was a vice-principal of SNS. *See GTE Sw.*, 998 S.W.2d at 618 (highest ranking management person stationed at facility that had authority to employ, direct, and discharge employees was vice-principal); *Then W.*, 2002 WL 1397477, at *6 (acting manager of a bar-restaurant was vice-principal); *Rainbow Exp.*, 780 S.W.2d at 431 (trucking company's "terminal manager with the right to direct and discharge" employees was vice-principal); *Treasure City*, 620 S.W.2d at 814 (head of store security was vice-principal). This evidence raises a genuine issue of material fact regarding SNS's traditional grounds for summary judgment entitling B.C. to have a jury determine this factual issue. Accordingly, I agree with B.C. that the trial court erred in granting summary judgment on B.C.'s common law assault claim against SNS.

### CONCLUSION

I conclude the trial court did not err in granting no-evidence summary judgment on B.C.'s pleaded vicarious liability theory. But I conclude there are genuine issues of

material fact regarding B.C.'s assault claim and whether Ventura was a vice-principal of SNS. Accordingly, I would reverse the trial court's summary judgment as to Ventura's alleged assault and vice-principal status and would remand for further proceedings consistent with this dissenting opinion. Because the majority opinion reaches a different result, I dissent.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

On the Court's own motion, we issue this supplemental opinion on rehearing.

For the first time during the appellate proceedings in this case, B.C. raises an argument in her Motion for En Banc Reconsideration based on evidence never presented to the trial court. Despite the issue being raised in the trial court and on appeal by Steak N Shake, B.C. ignored omissions in the record that have twice proven fatal to her case. Only now, after all briefing has taken place and opinions have issued, does B.C. ask this Court to withdraw our opinions and reconsider our decision based on evidence in a newly created "supplemental clerk's record." Granting such a request would violate well-established rules of trial and appellate procedure, and would also fundamentally confuse the proper roles of the trial and appellate courts. Accordingly, we decline B.C.'s request. We do, however, issue this supplemental opinion to explain fully our reason for denial.

## I. B.C. never challenged in her appeal the assertion that her summary judgment response was filed late

The majority opinion issued by this Court on August 30, 2017 concluded the trial court properly granted summary judgment against B.C. because she failed to timely file a response to Steak N Shake's no evidence motion for summary judgment and, therefore, did not meet her burden to show fact issues on the challenged elements of her claims. Both the majority opinion and the dissenting opinion were based on the premise, unchallenged on appeal and supported by the record, that B.C.'s response was filed late. Although the untimeliness of B.C.'s filing was discussed at length by Steak N Shake in its appellate brief, B.C. did not dispute the lateness of her filing in either her original brief or her reply brief. Nevertheless, B.C. now asserts *for the first time* in her motion for en banc reconsideration that her response to the no evidence motion was filed within the time allowed. By waiting to raise the issue until after this Court issued two opinions based on the unchallenged assertion that her response was untimely, B.C. has waived any argument that her response was timely filed. *See Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex. 2001). Rehearing is not an opportunity to test alternative arguments after finding the original arguments were unsuccessful. *See ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 535 (Tex. App.—El Paso 1994, writ denied).

## II. The record shows the summary judgment response was filed late

Both the record before the trial court when it rendered summary judgment, and the record on appeal when our opinions issued, showed B.C.'s response to the no evidence motion was filed one day late. *See Dallas Cty. v. Gonzalez*, 183 S.W.3d 94, 103 (Tex. App.—Dallas 2006, pet. denied) (document's file stamp is prima facie evidence of date of filing creating rebuttable presumption that it was filed on date shown). Nothing in the record indicated the trial court granted leave for the filing or otherwise considered it.

### III. The summary judgment hearing is not in the record

B.C. now contends she explained to the trial court at the hearing on the motion for summary judgment that she transmitted her response to an e-filing service provider on the due date, but it was rejected due to technical difficulties, and a corrected copy was filed the next day. However, the summary judgment hearing was not recorded so there is no reporter's record demonstrating what occurred.

### IV. The "supplemental clerk's record" filed by B.C. on September 14, 2017 does not contain *omitted* material, but rather a document filed in the trial court eight days after the issuance of our opinions

On September 7, 2017, after our opinions issued, B.C. filed in the trial court an e-filing receipt showing she transmitted her response to the no evidence motion on the day it was due. B.C. then requested the trial court to send a new "supplemental clerk's record" to this Court containing the receipt. Because this evidence was not before the trial court at the time it rendered judgment, and, indeed, was never a part of the trial court's record until after our opinions issued, we cannot consider it. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied).

### V. Any information in the record about technical difficulties in B.C.'s filing was submitted by Steak N Shake to show the response was untimely and was never addressed by B.C. on appeal

B.C. now points to affidavit testimony in the summary judgment record in which opposing counsel acknowledged B.C.'s counsel informed him "there had been a technical difficulty in attempting to file the response on the [due date]." But the summary judgment evidence does not show B.C. tendered her response for filing on the due date in a manner that would satisfy the requirements of Texas Rule of Civil Procedure 21. The affidavit of Steak N Shake's counsel has an attached email exchange in which the timeliness of the filing was discussed by counsel for both parties. But this shows only that B.C.'s counsel claimed he attempted to file the response on time. Steak N Shake's counsel never conceded this filing actually occurred or that it occurred in a manner that would satisfy the filing requirements. In fact, Steak N Shake specifically challenged the timeliness of the response in the summary judgment proceeding. This placed the burden on B.C. to produce evidence that the response was filed timely. *See Tex. Dep't of Family & Protective Servs. v. Wallace*, No. 03-12-00373-CV, 2013 WL 490976, at *2 (Tex. App.—Austin Jan. 31, 2013, no pet.) (mem. op.). She failed to do so. Accordingly, nothing in the record properly before us is sufficient to rebut or even create a fact issue on the presumption created by the file stamp that the response was filed one day late. *Id.*

This Court strives, as it should, to decide cases on the merits rather than procedural technicalities. *See In re K.C.B.*, 251 S.W.3d 514, 516 (Tex. 2008) (per curiam); *Worthy v. Collagen Corp.*, 967 S.W.2d 360, 366 (Tex. 1998); *Silk v. Terrell*, 898 S.W.2d 764, 766 (Tex. 1995) (per curiam). But there are limits to applying this tenet, and courts are understandably reluctant to allow supplementation after a court has issued an opinion in the case. As stated by Chief Justice Hecht in *Worthy*:

> Supplementation of the record after a case is decided is a different matter. It certainly does not serve judicial economy for the appellate court to allow a supplementation of the record that

would require it to reconsider its decision on the merits when the party has had ample opportunity to correct the omission prior to decision.

967 S.W.2d at 366.

Ultimately, however, supplementation of the record is irrelevant to our disposition in this case. The document with which B.C. seeks to supplement the record does not support any issue raised or argued by B.C. before her motion for reconsideration. B.C.'s arguments are no less waived on appeal simply because she has now supplied us with evidence to support an argument she never made in her briefing to this Court.

For these reasons, we decline B.C.'s request to withdraw our opinions and consider her newly filed evidence, which was not before the trial court prior to its judgment or before this Court prior to our opinions and judgment.