**AFFIRM; and Opinion Filed August 3, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-18-00440-CV
_____

**MILLENNIUM ICE, INC. AND OLEKSANDR VLADIMIR MATORIN A/K/A ALEXSANDR MATORIN, Appellants**

**V.**

**CRYOUSA, LLC, CRYOUSA MOBILE, LIMITED LIABILITY COMPANY, MILLENNIUM ICE PARTNERS, LLC, ERIC RAUSCHER INDIVIDUALLY AND PETER BELSKY, INDIVIDUALLY, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-08491**

## MEMORANDUM OPINION

Before Justices Evans, Whitehill, and Richter[1]
Opinion by Justice Richter

This case involves multiple claims, counterclaims and third-party claims. Appellant Millennium Ice, Inc. (MII) sued appellees CryoUSA, LLC, CryoUSA Mobile, LLC., Millennium Ice Partners, LLC (MIP), Eric Rauscher, and Peter Belsky asserting multiple claims, including claims for tortious interference and civil theft. MII also asserted a claim against Rauscher alone for breach of fiduciary duty. Appellees counterclaimed for breach of an Option Agreement and fraud. Appellees also brought third-party claims against appellant Okelsandr Vladimir Matorin

_____

[1] The Honorable Martin Richter, Justice of the Court of Appeals for the Fifth District of Texas at Dallas, Retired, sitting by assignment.

a/k/a Alexsandr Matorin (Matorin) for breach of MIP's LLC agreement, fraud, and breach of fiduciary duty.

The trial court granted a no-evidence summary judgment in favor of appellees on all of MII's claims. Following a bench trial, the trial court rendered judgment in favor of appellees on their counterclaims and third-party claims, awarding them $107,712.10 in damages, attorney's fees, and prejudgment interest. On appeal, appellants challenge both the summary judgment on MII's claims for tortious interference and breach of fiduciary duty and the trial court's judgment in favor of appellees on their affirmative claims. For the following reasons, we affirm.

**Background**

In 2008, Matorin, a Ukrainian national, formed MII to import cryotherapy chambers into the United States. A cryotherapy chamber is a device that surrounds the body with hyper-cold air for therapeutic purposes. After MII was formed, it entered into an agreement with Criomed, Ltd. a Ukrainian manufacturer, which granted MII the exclusive right to distribute Criomed products in the United States.

Matorin later approached Rauscher and Belsky with a business opportunity. Matorin told Rauscher and Belsky that he owned and controlled MII and he wanted to join forces with them in a manner that would enable them to capitalize on MII's exclusive rights and the developing cryotherapy market. Matorin, Rauscher, and Belsky agreed to form a new entity, MIP, to market and distribute cryotherapy devices in the United States. To that end, on July 15, 2010, they executed the MIP Limited Liability Company Agreement (the LLC Agreement). Under the terms of the LLC Agreement, the members and their "affiliates" were prohibited from competing with MIP without the consent of the other members.[2] The LLC Agreement also prohibited the members

---

[2] The LLC Agreement defined "affiliate" of a person to include a corporation in which the person had the right to exercise, directly or indirectly, more than fifty-one percent of the corporation's voting rights.

and their affiliates from profiting from any transactions with MIP unless the other members agreed to the transaction.

On the same date MIP was formed, MIP and MII executed an "Exclusive Option Agreement." The Option Agreement granted MIP the right to acquire cryotherapy equipment from MII at the "least possible cost." It defined least possible cost as "the lesser of (a) the cost for such [equipment] paid by MII or (b) such other amount agreed upon by the parties." The Option Agreement further provided that all sales of cryotherapy equipment in the United States must occur through MIP.

Over the course of a year and a half, MIP purchased nineteen Criomed devices from MII. Matorin, simultaneously acting on behalf of both MIP and MII, transferred $208,200 from MIP to MII in consideration for those devices. However, MII's total cost for the devices, which included both the amounts it paid Criomed for the devices and the cost to have the devices shipped to the United States totaled $100,487.90.

Meanwhile, Rauscher had formed CryoUSA, a business that allowed customers to obtain cryotherapy treatments at storefront locations. At some point, CryoUSA also began importing Criomed devices. MIP eventually ceased operations.

MII filed suit against CryoUSA, CryoUSA Mobile, MIP, Rauscher, and Belsky. MII asserted numerous claims against all appellees, including claims for tortious interference with contract, conversion, and civil theft. MII's complaints were based primarily on its allegation that, after MIP ceased conducting business, Rauscher conducted business on behalf of MII and then usurped its business and converted its funds. MII also alleged that Rauscher was a member of its board of directors. Based on that allegation, MII asserted a breach of fiduciary duty claim against Rauscher.

Appellees counterclaimed asserting claims for fraud and breach of the Option Agreement. Appellees also brought third-party claims against Matorin for breach of the LLC agreement, fraud, and breach of fiduciary duty.

Appellees moved for no-evidence summary judgment on all of MII's claims. Appellees also asserted they were entitled to traditional summary judgment on MII's claim for civil theft. Specifically, they asserted that MII had no interest in the property they allegedly appropriated or, at a minimum, ownership of such property was subject to a bona fide dispute. Following a hearing, the trial court granted appellees' motion for summary judgment and rendered judgment that MII take nothing on its claims.

Appellees' counterclaims and third-party claims were subsequently tried to the bench. The trial court rendered judgment in favor of appellees and awarded them $107,712.10 in damages, which represented the difference between the amount Matorin had caused MIP to pay MII for the devices and the total amount MII paid Criomed for the devices and to have them shipped to the United States. This appeal followed.

**No-Evidence Summary Judgment**

In their first issue, appellants assert the trial court erred in granting appellees' no-evidence motion for summary judgment on "their" claims for tortious interference with contract and breach of fiduciary duty. Although appellants filed separate notices of appeal, they have filed a joint brief. In that brief, appellants have largely failed to distinguish between themselves. This has resulted in several mischaracterizations of the record. As it relates to this issue, appellants have effectively represented that Matorin asserted claims that were then disposed of on summary judgment. Matorin did not assert any claims in the trial court and the trial court did not render judgment on any claims Matorin might have had. Thus, as it relates to this issue, MII is the only proper appellant. We will address the issue accordingly.

–4–

After adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. *See* TEX. R. CIV. P. 166a(i). The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. *Id.* A no-evidence motion for summary judgment shifts the burden of proof to the nonmovant to present summary judgment evidence raising a genuine fact issue. *See Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A trial court must grant a no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). The respondent is not required to "marshal its proof," but its response must point out evidence that raises a fact issue on the challenged elements. *Id*. TEX. R. CIV. P. cmt.–1997; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam).

### Application of Law to Facts

MII first generally asserts summary judgment was improper because the "discovery period had not concluded." MII does not point out in its brief nor have we found in the appellate record where MII presented to the trial court any argument that the timing of the no-evidence motion was improper, or that MII obtained a written ruling or anything that clearly implies a ruling by the trial court which is necessary for MII to preserve its argument. *See Seim v. Allstate Tex. Lloyds*, No. 17-0488, 2018 WL 3189568, at *3-4 (Tex. June 29, 2018) (per curiam) ("Rule 33.1(a) requires a timely and ruled-upon objection to preserve error.") (citing TEX. R. APP. P. 33.1(a) and *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003)). If we decided this argument on its merits, the trial court's scheduling order shows fact discovery closed on July 28, 2014, nearly two months before the

hearing on the motion. MII's contention is not supported by the record.[3] MII has failed to otherwise show the trial court abused its discretion in hearing and deciding the motion when it did. *See Rest. Teams Int'l, Inc. v. MG Sec. Corp*, 95 S.W.3d at 339 (review of trial court's determination that adequate time for discovery has passed governed by abuse-of-discretion standard).

In this issue, MII also complains the trial court erred in granting appellees' motion for summary judgment on the merits. MII specifically challenges the trial court's summary judgment on its claims for tortious interference with contract and breach of fiduciary duty. Appellees' no-evidence motion separately addressed each of MII's claims, including its claims for breach of fiduciary duty and tortious interference. Appellees listed the elements of both claims and specifically asserted MII had no evidence of any of the essential elements of each claim. Although MII generally complains appellees challenged all of the elements of all of their claims, there is no limit to the number of elements that may be challenged in a no-evidence motion. *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 861 (Tex. App.—Dallas 2005, no pet.).

Thus, the burden shifted to MII to file a legally adequate response to the motion. *B.C. v. Steak N Shake Operations, Inc.*, 532 S.W.3d 547, 549 (Tex. App.—Dallas 2017, pet. filed), as supplemented on denial of reh'g (Oct. 27, 2017). Our review of the record reflects that MII did not file anything that can be properly described as a summary judgment response.

To show it *filed* a "response" to the motion, MII cites us to its "Request for Leave to File a Late Response." But to show its response was adequate, MII relies on an attachment to that Request; specifically Matorin's unsworn declaration. The substance of MII's Request for Leave was consistent with its title. *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 899 (Tex. App.—Dallas 2006), *aff'd*, 290 S.W.3d 886 (Tex. 2009) (we look to the substance of a pleading to

---

[3] We further note that, contrary to MII's suggestion, the rule does not require that discovery be complete, only that adequate time for discovery have passed. *See* Tex. R. Civ. P. 166a(i); *Ling v. BDA&K Bus. Services, Inc*., 261 S.W.3d 341, 349 (Tex. App.—Dallas 2008, no pet).

determine its nature, not merely the title given to it). It merely requested leave to file a late response. It contained no substantive response to the motion. Nevertheless, the record does reflect MII filed the Request for Leave as its actual summary judgment response and, to that end it attached its responsive evidence to its Request. The record further reflects the trial court clerk docketed MII's "Request" as its summary judgment response. [4] Although it was untimely, the trial court's judgment reflects it considered MII's "response." Nevertheless, to the extent MII's "Request for Leave" served as a "response," it is apparent it was merely the vehicle MII used to file responsive evidence to the motion. Matorin's unsworn declaration, on the other hand, was nothing more than summary judgment evidence; it was not a summary judgment response.

The nonmovant's response to a no-evidence motion must, at a minimum, identify the evidence the nonmovant is relying on to show a fact issue exists. *Steak N Shake Operations,* 532 S.W.3d at 551. We conclude MII's "response" was not legally adequate to defeat the no-evidence motion. Therefore, the trial court did not err in granting summary judgment on MII's claims.

In reaching this conclusion, we necessarily reject MII's assertion summary judgment was improper because appellees' motion contained a "judicial admission" that a "bona fide dispute" existed. MII is relying on the statement appellees made to support their traditional summary judgment on MII's theft claim. MII does not contend the alleged judicial admission rendered the no-evidence motion legally insufficient. We nevertheless note the alleged admission was in no way inconsistent with appellees' assertion that MII had no evidence to support the challenged

---

[4] MII response was due no later than September 12. Appellees, however, agreed MII could file its response on September 15, provided it did so by noon. On the morning of September 15, 2014, MII filed a "Request for Leave" to file its summary judgment response less than seven days before hearing. MII filed the "Request for Leave" twice, once with no attachments and once with attachments. It is the latter filing that was docketed as, and MII cites to, to show it filed a summary judgment response. MII attached a one-page document entitled "Declaration and Exhibits in Response to No Evidence Motion for Summary Judgment and Traditional Summary Judgment" to that Request for Leave It consists of only a "Table of Contents" listing MII's summary judgment evidence, which was also attached. Matorin's unsworn declaration was amongst those attachments. Of note, the Table of Contents contains a case style and caption that suggests MII intended to file it separately. But it does not contain a certificate of service and is not signed by counsel.

elements of its claims.[5]  Further, regardless of whether appellees' motion may have contained any admissions, it remains that MII filed no substantive response to the no-evidence motion.   Thus, the trial court was required to grant the motion.  *Cf. Steak N Shake Operations,* 532 S.W.3d at 552 (nonmovant may not rely on evidence the movant points out to support traditional summary judgment to defeat no-evidence summary judgment); *Sherman v. Merit Office Portfolio, Ltd*., 106 S.W.3d 135, 140–41 (Tex. App.—Dallas 2003, pet. denied) ("By not expressly raising his judicial admission objection in his response to the motion for directed verdict, [appellant] waived his right to rely on this judicial admission argument on appeal.").  We resolve the first issue against MII. In their second issue, appellants contend the trial court's error in granting summary judgment prevented them from obtaining a fair trial on appellees' counterclaims and third-party claims. Because we have concluded the trial court did not err in granting summary judgment, we resolve this issue against appellants.

## Appellees' Counterclaims and Third-Party Claims

Appellants brief their remaining six issues together, all of which complain of the trial court's judgment in favor of appellees on their counterclaims and third-party claims.   Before turning to the merits, we must first address additional issues with appellants' briefing.

The Texas Rules of Appellate Procedure control the required content and organization for an appellant's brief.  *See* TEX. R. APP. P. 38.1.  A brief must state concisely all issues or points presented for review.  *See* TEX. R. APP. P. 38.1(f).  A brief must also contain an argument for the contentions made with appropriate citations to authorities and to the record.  *See* TEX. R. APP. P. 38.1(i).  We are not responsible for identifying possible trial court error, searching the record for facts that may be favorable to a party's position, or doing the legal research that might support a

---

[5] Furthermore, contrary to MII's assertion, appellees did not admit a genuine dispute of material *fact* existed.  Rather, appellees asserted that they did not commit civil theft because, at a minimum, there was a "bona fide" dispute over ownership.  *See Willacy County Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.,* 16-0626, 2018 WL 1974485, at *10 (Tex. Apr. 27, 2018) (disputes over ownership can involve legal and/or factual questions).

party's position. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App. Dallas 2010, no pet.). We may not speculate as to the substance of the specific issues asserted by an appellant and may not make a party's arguments for him. *Strange v. Contl. Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App. Dallas 2004, pet. denied). An appellant's failure to cite legal authority or provide substantive analysis of a legal issue results in waiver of the complaint. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (observing that error may be waived by inadequate briefing); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). At a minimum, to address an issue on appeal, we must be able to discern what question of law we are being asked to decide. *Bolling*, 315 S.W.3d at 896.

Appellants' brief lists several issues. In the third, fourth, and fifth listed issues, appellants contend the trial court "erred" in making seventeen different findings of fact. In the sixth, seventh, and eighth listed issues, appellants contend the trial court erred in making sixteen different conclusions of law. In the body of their brief, appellants do not restate these issues or connect their arguments to their issues.[6] Instead, appellants' challenges to the trial court's findings of facts and/or its conclusions of law are contained under two headings.

The first heading asserts "the Great Weight of the Evidence Negated Findings of Nondisclosure and Breaches of Fiduciary Duty by Matorin." The two paragraphs of "argument" that follow do not contain any citations to legal authority. Nor do they contain any substantive analysis from which we can discern the legal basis of appellants' complaint. We conclude their complaint presents nothing to review.

Under the second heading, appellants contend "the Great Weight and Preponderance of the Evidence did not Support the Trial Court's Findings of Overcharges." The only legal authority

---

[6] We, of course, must consider all arguments asserted by an appellant. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) ("appellate court should consider the parties' arguments supporting each point of error and not merely the wording of the points.... [When the] body of the argument supporting the point of error" presented an argument not raised in that point of error, appellate court should consider the argument not included in the statement of the point of error).

appellants cite under this heading concerns contract interpretation. Appellants' substantive argument also appears to be based on the trial court's interpretation of the meaning of "least possible cost" as used on the Option Agreement.

In its findings of facts, the trial court found that, over the duration of the Option Agreement, MIP purchased 19 Criomed cryotherapy devices from MII. The trial court also found "MII's total cost for those 19 machine purchases – including all payments to the manufacturer, Criomed, and all shipping – was $100,487.90." Based on that finding, the trial court awarded appellees $107,712.10 in damages.

Under this "issue," appellants contend "the undisputed evidence, supported by exhibits, established that the costs contended by [a]ppellees were vastly understated, and ignored entire categories of very real and very significant expenses." Appellants do not cite us to where in the record this allegedly undisputed evidence is located. Nor do they describe the nature of this evidence or the nature of the "costs" they are referring to. We nevertheless note Matorin admitted he charged MIP for "expenses" MII incurred after it acquired the devices, including "expenses" associated with assembling the devices, and modifying their voltage. Under the plain terms of the Option Agreement, the purchase price for cryoequipment MIP acquired from MII was to be no more than "the cost *for* such [equipment] *paid* by MII." We disagree the Option Agreement authorized Matorin to charge MIP for expenses or other costs related to the equipment. We conclude appellants have failed to show the trial court's judgment was erroneous.

We affirm the trial court's judgment.

/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

180440F.P05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| MILLENNIUM ICE, INC. AND OLEKSANDR VLADIMIR MATORIN A/K/A ALEXSANDR MATORIN, Appellants | On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-13-08491. Opinion delivered by Justice Richter. Justices Evans and Whitehill participating. |

No. 05-18-00440-CV          V.

CRYOUSA, LLC, CRYOUSA MOBILE, LIMITED LIABILITY COMPANY, MILLENNIUM ICE PARTNERS, LLC, ERIC RAUSCHER, INDIVIDUALLY, AND PETER BELSKY, INDIVIDUALLY, Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees CRYOUSA, LLC, CRYOUSA MOBILE, LIMITED LIABILITY COMPANY, MILLENNIUM ICE PARTNERS, LLC, ERIC RAUSCHER, INDIVIDUALLY, AND PETER BELSKY, INDIVIDUALLY recover their costs of this appeal from appellants MILLENNIUM ICE, INC. AND OLEKSANDR VLADIMIR MATORIN A/K/A ALEXSANDR MATORIN.

Judgment entered this 3rd day of August, 2018.