

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00325-CV
_____

BRIAN JACKSON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF
CHARLES WHERRY JACKSON, DECEASED, APPELLANT

V.

MICHELIN NORTH AMERICA, INC., APPELLEE

On Appeal from the 287th District Court
Parmer County, Texas
Trial Court No. 10,603; Honorable Gordon Green, Presiding

September 10, 2018

MEMORANDUM OPINION

Before CAMPBELL, PIRTLE, and PARKER, JJ.

The ultimate issue in this case is whether the trial court properly excluded the opinions of three expert witnesses in this products liability cause of action arising from the failure of an eleven-year-old pneumatic tire. Appellant, Brian Jackson, individually and as representative of the estate of Charles Wherry Jackson, appeals a summary judgment rendered in favor of Appellee, Michelin North America, Inc., in his wrongful death and survivorship products liability cause of action. By three issues, Jackson contends the trial

court erred in excluding the testimony of his (1) defects expert, (2) warnings expert, and (3) accident reconstruction expert. By a fourth and final issue, he contends the trial court erred in granting Michelin's no-evidence summary judgment because the testimony of those experts should not have been excluded. We affirm.

BACKGROUND

Charles Wherry Jackson was killed as the result of a single vehicle accident that occurred on April 9, 2014. On that day, Charles was driving his employer's 1998 Ford F-150 pickup eastbound on Highway 60, in Parmer County, Texas, when the right rear tire of the vehicle suddenly failed, causing Charles to steer the vehicle into the median where it crashed and rolled over, causing his fatal injuries.

The tire in question was an eleven-year-old Michelin Cross Terrain SUV tire that, at the time of the accident, had an average tread depth of 2/32nds of an inch in the center two grooves of the tire tread. Based on service records and tread depth, Michelin's expert, Joe Grant, opined that the tire had traveled over 78,000 miles.[1] Summary judgment evidence also established that the tire had an unrepaired puncture that may have led to it being driven while under-inflated.

Jackson sued Michelin asserting claims for strict products liability (based on allegations of design, manufacturing, and marketing defects), negligence, and gross negligence. He subsequently designated three experts: William Woehrle, O.C. Ferrell, and Curtis Flynn. In appropriately designated summary judgment evidence, Woehrle opined that the tire in question failed due to defects in both design and manufacturing;

---

[1] One of Jackson's designated experts, William Woehrle, opined that the tire might have traveled as much as 100,000 miles. Woehrle's opinion was, however, excluded.

Ferrell provided an opinion that all tire manufacturers should provide an age warning on the sidewall of each tire manufactured; and Flynn offered expert testimony regarding accident reconstruction. Michelin challenged the qualifications and reliability of the opinion testimony of each of these witnesses and, subject to the exclusion of their testimonies, moved for a no-evidence motion for summary judgment. In that motion, Michelin contended Jackson had failed to establish any evidence on at least one essential element of each of his alleged causes of action. The trial court heard evidence and arguments of counsel regarding Michelin's motions to exclude the expert testimony of Jackson's designated witnesses, and at the conclusion of that hearing, it excluded the testimony of each witness and granted Michelin's motion for summary judgment.

STANDARD OF REVIEW—EXCLUSION OF EVIDENCE

Rule 702 of the Texas Rules of Evidence provides that an expert may testify if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. The expert's opinion is, however, inadmissible if the trial court determines that the underlying facts or data do not provide a sufficient basis for the opinion. TEX. R. EVID. 705(c).

To be admissible, an expert's opinion must be both relevant and reliable. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556-58 (Tex. 1995). *See also Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The requirement that expert testimony be relevant incorporates traditional relevancy analysis under Rules 401 and 402 of the Texas Rules of Evidence, and, in order to be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Robinson*, 923 S.W.2d at 556

3

(quoting *Daubert*, 113 S. Ct. at 2796). Therefore, it is the burden of the proponent of any expert opinion testimony to establish that the expert is qualified by way of specialized knowledge as to the very issue upon which the testimony is being offered. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718-19 (Tex. 1998). In addition, in order to be reliable, the expert must explain how the facts of the case support the conclusion. *See Volkswagen of Am.*, *Inc. v. Ramirez*, 159 S.W.3d 897, 905-06 (Tex. 2004). Without a substantial basis in fact, an expert's bare opinion will not suffice. *Id.* Accordingly, an expert's opinion that is based on assumed facts that vary from the established facts is "incompetent evidence," without probative value, and such conclusory testimony cannot support a judgment. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (holding that "[o]pinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable'") (citing TEX. R. EVID. 401). *See also Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995).

It is not the role of the trial court to determine the truth or falsity of an expert's opinion. *See Robinson*, 923 S.W.2d at 558. Rather, the trial court's role regarding expert opinion testimony is to serve as an evidentiary gatekeeper, making the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *Id.* As previously stated, it is the burden of the proponent of the evidence to demonstrate that the expert's opinion is both relevant and reliable. *Id.* at 557. If the expert's opinion is not relevant or reliable, it is not evidence

4

and it will not serve to defeat a no-evidence motion for summary judgment.[2] *Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 713 (Tex. 1997), *cert. denied,* 523 U.S. 1119, 118 S. Ct. 1799, 140 L. Ed. 2d 939 (1998). While an expert witness may be very believable, his conclusions may not be based on irrelevant assumptions or unreliable methodology. *Robinson*, 923 S.W.2d at 558.

Although a trial court must act as an evidentiary gatekeeper by screening out irrelevant and unreliable expert testimony; *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012), it still has broad discretion to determine the admissibility of evidence. *See Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002). We may not disturb the trial court's exercise of that discretion so long as it does not abuse it. *Gammill,* 972 S.W.2d at 718-19. In that regard, a trial court abuses its discretion if its decision is arbitrary and unreasonable without reference to any guiding rules or principles. *Robinson*, 923 S.W.2d at 558 (citing *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986)).

STANDARD OF REVIEW—NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In reviewing a no-evidence summary judgment, this court must apply well-established standards. Under Texas Rule of Civil Procedure 166a(i), after an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence to support at least one of the essential elements of the non-movant's claim or defense. *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005). A no-

---

[2] If the trial court concludes that the "evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment . . . and likewise grant summary judgment." *Daubert*, 509 U.S. at 596.

evidence motion for summary judgment must specifically set forth the elements of the non-movant's claim or defense for which there is no evidence. *Id.* When properly raised, the burden shifts and the trial court must grant summary judgment unless the adverse party produces sufficient summary judgment evidence raising a genuine issue of material fact. *Forbes, Inc. v. Mem. Med. Ctr. of E. Tex.,* 105 S.W.3d 167, 172 (Tex. 2003); *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex. 2002).

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750-51 (Tex. 2003); *Roth v. FFP Operating Partners,* 994 S.W.2d 190, 195 (Tex. App.—Amarillo 1999, pet denied.); *Jackson v. Fiesta Mart, Inc.* 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). Accordingly, we must ascertain whether the non-movant has produced any evidence of probative force to raise a fact issue on a material issue and we must consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Havner,* 953 S.W.2d at 711. A no-evidence summary judgment is not proper if the non-movant has presented more than a scintilla of probative evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.,* 979 S.W.2d at 70-71. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711. Therefore, a non-movant will defeat a no-evidence summary judgment by presenting the court with some evidence on each element of his claim or defense for which the movant asserts there is no evidence. When an order granting summary judgment does not specify the grounds upon which it was granted, we must affirm the trial court's judgment if any of the theories advanced are

6

meritorious. *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 281 n.3 (Tex. 2017); *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex. 1989).

ANALYSIS

ISSUE ONE—EXCLUSION OF WILLIAM WOEHRLE'S TESTIMONY

Jackson offered the expert testimony of William Woehrle on the question of tire defects—both design and manufacture—to support his claim of liability on the part of Michelin. Despite the lack of a formal engineering degree, Jackson maintains Woehrle is qualified to offer expert opinions on tire design and manufacturing based on his many years of experience in the tire industry as an employee of Uniroyal and Goodrich, as well as service as a founder of Automotive Engineering Management Services, Inc., a company dedicated to serving the automotive industry by focusing on tire testing services.

Some courts have previously rejected Woehrle's credentials as an expert. *See Ho v. Michelin N. Am., Inc.*, 520 F. App'x. 658, 665 (10th Cir. Mar. 29, 2013) (unpublished) (concluding Woehrle's "lack of a nylon cap ply design defect opinion" was unsupported and inadmissible). Whereas, other courts have found his opinions to be admissible. *See Perez v. Goodyear Tire & Rubber Co.*, No. 04-14-00620-CV, 2016 Tex. App. LEXIS 3774, at *12-13 (Tex. App.—San Antonio, April 13, 2016, pet. denied) (design defect opinion based on Goodyear documents and Goodyear employee depositions that demonstrated Goodyear had knowledge that "nylon overlay would have prevented tread separation" yet choose not to implement fix, found to be admissible).

In his deposition, which was offered as summary judgment evidence, Woehrle opined that the tire in question failed because (1) the tire was not designed with a nylon

7

cap ply and (2) its inner liner[3] was thinner than allowed by Michelin's original design specifications. Michelin attacked the reliability of Woehrle's opinions on the basis that his opinions were not reliable because he was not qualified to render an opinion on these alleged defects.

*Design Defect Theory* - In order to establish liability based on a design defect, a claimant must be able to establish that (1) the product in question (in this instance the tire that actually failed) was unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use, (2) a safer alternative design was practically available, and (3) the design defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a) (West 2017); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 (Tex. 1999) (stating that a claimant must not only meet the requirements of section 82.005, he must also show, under common law, that the product was defectively designed so as to be *unreasonably dangerous,* taking into consideration the utility of the product and the risk involved in its use). Proof of a design defect requires competent expert testimony and objective proof that the design defect itself caused the injury. *Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004).

Here, Woehrle opined that the tire in question was defectively designed because it lacked a "nylon cap ply." Michelin questions Woehrle's qualifications to render that opinion because he is not an engineer or a tire designer, by training, education, license,

---

[3] In the tire industry, an inner liner is an elastic layer bonded to the inner surface of a pneumatic tire, designed to prevent or retard the permeation of air and moisture into the body of the tire from its inner air chamber.

or experience. He has never designed a steel-belted radial tire and he has admitted he is not qualified to design such tires. In essence, Woehrle's expert testimony, as he sought to support Jackson's design defect theory, was that Michelin should have predicted that the tire in question would have been used for more than ten years, and that the tire, as designed, was unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use. He offered no real opinions as to whether adding a nylon cap ply would have been an economically practical, safer alternative.

While Woehrle did admit that not all tires need a nylon cap ply, he opined that this particular tire needed a nylon cap ply because it was reasonable to foresee that it could be on the road for more than ten years. But, that statement could be true of many tires— even the tires Woehrle admits do not need a nylon cap ply. That circuitous reasoning defeats itself. Woehrle further postulates that the tire in question required a nylon cap ply because that particular design of tire had "durability" problems. This conclusion was based on twelve warranty claims and speculative development testing that "would have predicted failures of the types identified in the complaints." In this case, Woehrle did not review the warranty claim tires, nor did he investigate the circumstances surrounding those claims. He could not link the warranty claims to any "durability" issues and he had no data upon which he could determine whether the number of warranty claims was statistically significant based on the total number of tires manufactured and sold.

In his report, Woehrle points to Michelin's use of a nylon cap ply in the manufacture of later-produced tire lines as proof of the design defect of the tire in question. Michelin responds by pointing out that not every tire produced, even now, has a nylon cap ply, and that a nylon cap ply can be added to a tire for a variety of reasons.

9

Manufacturers are not the absolute insurers of a consumer's safety and the question is not whether Michelin could have designed a safer tire. A nylon capped tire might well have been a safer tire. But that is not the question. The question is—as designed and manufactured, was the tire in question unreasonably dangerous; and, only if so, considering its utility and the risk involved in its use, was the addition of a nylon cap ply an economically feasible, practically available, safer alternative design that would have reduced the risk of its use to an acceptable level? As to his claimed design defect, Woehrle offers no analysis and relies on no data to establish that the tire as designed is unreasonably dangerous. He does proffer an opinion regarding a nylon cap ply as a safer alternative, but he fails to provide any analysis as to whether its use was economically feasible or practically available, rendering any opinion about the reasonableness of the "improvement" involved pure speculation. "[A] claim will not stand or fall on the mere *ipse dixit* of a credientialed witness." *Coastal Transp. Co.*, 136 S.W.3d at 232. In order to establish a design defect, plaintiffs must establish that the product in question, as designed and manufactured, was unreasonably dangerous—not simply that they think they could improve upon it.

*Manufacturing Defect Theory* - Liability can also arise from a manufacturing defect if the product, as manufactured, deviates from the specifications or planned output in a manner that renders the product unreasonably dangerous. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) (finding a manufacturing defect to be a deviation from the "specifications or planned output in a manner that renders the product unreasonably dangerous").

10

Woehrle's manufacturing defect theory was that the tire's inner liner was too thin because body ply cord impressions could be seen and felt through the inner liner of the tire—a phenomenon known as "cord shadowing." Michelin points out several problems with this theory: (1) cord shadowing is not, in and of itself, an indicator that the inner liner does not meet design specifications, (2) even if cord shadowing was apparent when examined, one could only speculate about the condition of the inner liner when the tire was manufactured more than a decade earlier, before the tire was subjected to the stress of years of normal use, road hazards, and the accident itself, and (3) no definitive testing was conducted to determine whether the actual thickness of the inner liner of the tire in question deviated from the design specifications. Because no measurements were ever made, Woehrle's opinion is purely speculative concerning whether the appearance of cord shadowing establishes a deviation in the thickness of the inner liner from the original specifications or planned output at the time of manufacture—constituting no evidence whatsoever of a manufacturing defect. Issue one is overruled.

ANALYSIS

ISSUE TWO—EXCLUSION OF O.C. FERRELL'S TESTIMONY

In addition to his claims regarding alleged design and manufacturing defects, Jackson also asserted a claim for strict products liability based on marketing defects. To prevail on a marketing defect claim, a plaintiff must establish, among other things, that the alleged failure to warn was a "causative nexus" in the product user's injury. *Medina v. Michelin N. Am., Inc.,* No. 05-16-00794-CV, 2018 Tex. App. LEXIS 804, at *11 (Tex. App.—Dallas Jan. 39, 2018, no pet.) (mem. op.) (citing *Goodyear Tire & Rubber Co. v. Rios,* 143 S.W.3d 107, 116 (Tex. App.—San Antonio 2004, pet. denied)). To perform a proper warning analysis, an expert should understand the potential dangers associated

with using a product, the likelihood and potential severity of injuries associated with a lack of notice of those dangers, whether the dangers are generally known to the public, and whether a given warning would reduce the risk of injury or death. *Rios*, 143 S.W.3d at 117-18.

Jackson's expert witness regarding Jackson's marketing defect claim was O.C. Ferrell. In his deposition testimony, Ferrell proffered his opinion that all tire manufacturers should provide an age warning on the sidewall of each tire manufactured so that consumers would be aware of the dangers associated with the use of a product based upon its age and anticipated use. Ferrell, however, was not proffered as a products expert or human factors expert concerning the interrelationship between a consumer and various product warnings or how those interactions and warnings could make a product safer. In fact, Ferrell could not even speculate at to what an "appropriate" warning, if given, might say. Instead, he was proffered as an expert in marketing, public policy, and business ethics.

Because Ferrell admitted that he did not have a complete understanding of the potential dangers associated with pneumatic tires, nor the potential risks associated with a lack of notice of those dangers, that he did not know whether those risks were generally known to the public, whether a given warning would reduce the risk of injury or death, or whether a product lacking such warnings was unreasonably dangerous, we do not see how his testimony could have been relevant or reliable on the issue of a marketing defect. Furthermore, Ferrell could not even speculate on what would constitute an appropriate warning, much less whether a product user aware of that warning would have heeded the danger thereby reducing the risk of injury or death. Because we find expert testimony

was necessary in order to support Jackson's marketing defect claim and that a fact finder simply could not have determined, without the benefit of expert testimony, whether any warnings would have been effective in making the tire in question safer, we likewise find the trial court did not err in excluding Ferrell's testimony. Issue two is overruled.

ANALYSIS

ISSUE THREE—EXCLUSION OF CURTIS FLYNN'S TESTIMONY

By his third issue, Jackson contends the trial court erred by excluding the testimony of his accident reconstruction expert, Curtis Flynn. Here, the trial court did not exclude Flynn's testimony in its entirety. Instead, Michelin sought (and the trial court granted) exclusion on the limited issue of vehicle handling and controllability, seeking to distinguish issues of *what* happened during the accident (e.g., vehicle location, movement, and speed) from issues of *why* the accident happened (e.g., the handling characteristics of this type of vehicle when a rear tire blows out due to tread detachment).

Flynn's affidavit did not explain the basis for his controllability opinions other than to say that tire tread detachments affect vehicle handling characteristics (an issue that is not disputed). Significantly, he did not expressly state how the controllability of the type of vehicle in question would be affected or that Jackson's vehicle was not controllable. By way of contrast, Michelin's expert, Bob Rucoba, referred to specific controllability testing on a similar Ford F-150 pickup. He explained the methodology and purpose of controllability testing and he explained the basis for his conclusion that Jackson's vehicle was controllable following the tread separation.

Because the trial court did not exclude Flynn's accident reconstruction testimony regarding what happened during the accident and because Flynn's testimony regarding

13

the handling characteristics and controllability of this type of vehicle was not reliable, the trial court did not abuse its discretion in excluding that portion of Flynn's testimony dealing with controllability. Issue three is overruled.

ANALYSIS

ISSUE FOUR—SUMMARY JUDGMENT

By his fourth and final issue, Jackson contends the trial court erred by granting Michelin's no-evidence motion for summary judgment. Jackson's argument is based solely upon his position that the trial court erred in excluding the expert testimonies of Woehrle, Ferrell, and Flynn.

In a product liability case, a defendant is entitled to a no-evidence summary judgment if the plaintiff fails to produce evidence of sufficient probative force to raise a fact issue on the issues of product defect and causation. *Havner,* 953 S.W.2d at 711. Where, as here, by virtue of excluding the testimonies of Woehrle, Ferrell, and Flynn, Jackson has failed to raise a fact issue on an essential element of his claim, the trial court did not err in granting summary judgment in favor of Michelin. Issue four is overruled.

CONCLUSION

We affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

14