v.

STEAK N SHAKE OPERATIONS,
INC., Respondent

No. 15–0404

Supreme Court of Texas.

Argued November 7, 2016

OPINION DELIVERED:
February 24, 2017

Daniel Robert Thering, Thering & Associates, PLLC, Frisco TX, Matthew J. Kita, Attorney at Law, Matthew Ryan McCarley, Fears Nachawati, PLLC, Dallas TX, for Petitioner.

Christopher Louis Kurzner, Kurzner PC, Dallas TX, for Respondent.

Bryan O. Blevins Jr. Texas Trial Lawyers Association, Gretchen Sims Sween, Beck Redden LLP, Austin TX, James Lewis, Lewis Law Office, P.C., Maisha Colter, Aid to Victims of Domestic Abuse, Peter M. Kelly, Kelly Durham & Pittard, LLP, Houston TX, Julia F. Pendery, Attorney at Law, Dallas TX, for Amicus Curiae.

Justice Green delivered the opinion of the Court.

In this case, we must decide whether a plaintiff's remedy in a sexual assault case against her employer arises exclusively within the statutory sexual harassment framework found in the Texas Commission on Human Rights Act (TCHRA) or whether the plaintiff can bring a separate common law claim for assault. The court of appeals held that the TCHRA provides the exclusive remedy for sexual harassment. 461 S.W.3d 928, 930 (Tex. App.–Dallas 2015, pet. granted). We hold that where the gravamen of a plaintiff's claim is not harassment, but rather assault, as it is here, the TCHRA does not preempt the plaintiff's common law assault claim. Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals for consideration of issues not previously addressed.

## I. Background and Procedural History

B.C., formerly an associate at the Frisco, Texas, Steak N Shake restaurant, alleges that she was sexually assaulted by her supervisor during an overnight shift on

company property in October 2011.[1] According to B.C.'s deposition testimony, B.C.'s supervisor had called her into work at about 10:00 p.m., an hour early, to take over as the lone server in the restaurant, where she was joined only by her supervisor and a cook. Not long after midnight, B.C. discovered her supervisor and the cook drinking bottled beers in the restaurant parking lot while on a break. B.C. admits that she joined them at different times throughout the night to take a break, smoking cigarettes and even having a sip of their beer. During one break, B.C. joined her supervisor in his vehicle to avoid the light rain that had started to fall. After running out of cigarettes, the supervisor invited B.C. to accompany him on a drive to a nearby store to buy more. B.C. agreed, and after a short trip the two returned to work. Some time between 4:30 and 5:00 a.m., B.C.'s supervisor invited B.C. to smoke another cigarette, but this time he invited her to the employee restroom due to the increasingly poor weather.

Until this time, according to B.C.'s testimony, her supervisor had neither spoken nor acted in a sexually suggestive manner. The two had talked about work and their families. After only a minute or two in the restroom, however, B.C.'s supervisor allegedly pushed her against a sink, grabbed her by the back of the head, and pulled her head toward him, trying to kiss her. B.C. repeatedly told her supervisor "no" and tried to push him away, but she was unable to escape. During the struggle, B.C. alleges, the supervisor began pulling down her pants while putting his hand up her shirt. At one point, B.C. was briefly able to break loose from her supervisor's grasp only to then be pushed back against a restroom wall, where she was unable to escape him. The supervisor began to unbuckle his pants, exposing his genitals to B.C. Still holding on to B.C. and preventing her escape, the supervisor allegedly grabbed B.C.'s head, pulling it toward him. The supervisor then lost his balance and fell to the ground, allowing B.C. to finally escape and flee the restroom.

Later that day, B.C. and her mother reported the incident to Steak N Shake and the police. After completing an internal investigation, Steak N Shake was unable to confirm B.C.'s allegations, concluding that the only portion of her story supported by evidence was that someone had smoked in the employee restroom. As a result, B.C.'s supervisor was not terminated, nor was he transferred to another location. Steak N Shake extended an unqualified offer for B.C. to return to work at any Steak N Shake location, but she instead opted to terminate her employment.

B.C. later sued Steak N Shake and her supervisor, asserting causes of action including assault, sexual assault, battery, negligence, gross negligence, and intentional infliction of emotional distress.[2] B.C. alleged that Steak N Shake was directly responsible for the assault because her supervisor was acting as a vice principal of the Frisco Steak N Shake restaurant. Steak N Shake moved for summary judgment on all claims, asserting, among other things, that the TCHRA's statutory cause of action preempts B.C.'s common law

---

1.  B.C.'s supervisor, Jose Tomas Ventura, was employed as a "restaurant manager" at the time of the alleged assault.

2.  In B.C.'s live pleading, she refers to assault, sexual assault, and battery together. We have recognized that Texas courts in civil cases use the terms "assault," "battery," and "assault and battery" interchangeably. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010). Accordingly, we refer to B.C.'s claims for assault, sexual assault, and battery collectively as assault or sexual assault.

claims. The trial court granted Steak N Shake's motion but did not provide a basis for its ruling. B.C. nonsuited her claims against her supervisor and then appealed only the trial court's ruling on her assault claim against Steak N Shake.

The court of appeals affirmed the trial court's ruling, but only on the ground that the TCHRA preempts B.C.'s assault claim. 461 S.W.3d at 929–30. Relying on our decision in *Waffle House, Inc. v. Williams*, 313 S.W.3d 796 (Tex. 2010), the court of appeals held that the TCHRA's statutory remedy is the exclusive remedy for workplace sexual harassment, and "[t]o allow B.C. to bring an assault claim based on the same conduct that is actionable under TCHRA as sexual harassment would permit her to circumvent the comprehensive anti-harassment regime crafted by the Legislature, rendering TCHRA's remedy limitations meaningless." 461 S.W.3d at 930 (citing *Waffle House*, 313 S.W.3d at 807–08).

## II. Analysis

▮ "We review a grant of summary judgment de novo." *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015). The movant must prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.*; Tex. R. Civ. P. 166a(c). We review summary judgment evidence "in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Lopez*, 465 S.W.3d at 641 (quoting *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

## A. The TCHRA

▮ The TCHRA "is modeled after federal law with the purpose of executing the policies set forth in Title VII of the federal Civil Rights Act of 1964." *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445–46 (Tex. 2004) (citations omitted); *see* Tex. Lab. Code. § 21.001. Combating gender-based discrimination is one of those policies. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Zeltwanger*, 144 S.W.3d at 445. Accordingly, "Texas courts look to analogous federal law in applying the state Act." *Waffle House*, 313 S.W.3d at 804 (citing *Zeltwanger*, 144 S.W.3d at 445–46; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam)). Additionally, the TCHRA was enacted to:

> secure for persons in this state . . . freedom from discrimination in certain employment transactions, in order to protect their personal dignity; . . . make available to the state the full productive capacities of persons in this state; . . . avoid domestic strife and unrest in this state; . . . preserve the public safety, health, and general welfare; and . . . [to] promote the interests, rights, and privileges of persons in this state.

Tex. Lab. Code. § 21.001(4)–(8). "Sexual harassment is a recognized cause of action under Title VII and the TCHRA," and when pursuing a sexual harassment claim there are generally two types: quid pro quo and hostile work environment. *Waffle House*, 313 S.W.3d at 804 (citing *Zeltwanger*, 144 S.W.3d at 445 & n.5).

## B. *Waffle House, Inc. v. Williams*

Because the court of appeals based its decision largely on its interpretation of our 2010 decision in *Waffle House*, our analysis begins there. *See* 461 S.W.3d at 930. In *Waffle House*, we identified the issue be-

fore us as "whether a common-law negligence action should lie against [an] *employer* for allowing [a] coworker's tortious or criminal conduct to occur, or whether, instead, a statutory regime comprehensively addressing employer-employee relations in this context should exclusively govern." 313 S.W.3d at 803. We warned that should the common law claims for negligent supervision and retention be allowed to coexist with "the panoply of special rules" crafted by the Legislature and embodied in the comprehensive TCHRA scheme "in any case where the alleged sexual harassment included even the slightest physical contact," then

> [t]he statutory requirements of exhaustion of administrative remedies and the purposes behind the administrative phase of proceedings, the relatively short statute of limitations, the limits on compensatory and punitive damages, the requirement that the plaintiff prove an abusive working environment, and all other special rules and procedures governing the statutory sexual-harassment claim could be evaded.

*Id.* at 807. Underlying our concern was the recognition that the Legislature enacted the TCHRA for the purpose of balancing the needs of the citizens of our state to have a cognizable claim for sexual harassment with the interests of employers who are required to provide a workplace free from gender-based discrimination. *See id.* at 802–07. Stated differently, this balance affords an aggrieved party a claim and remedy, but it also limits potential claimants, provides defenses to employers otherwise liable for the actions of their employees, and establishes a public policy that favors resolution of sexual harassment claims by conciliation instead of litigation. *Id.* Therefore, we held, "[w]here the gravamen of a plaintiff's case is TCHRA-covered harassment, the Act forecloses common-law theories predicated on the same

underlying sexual-harassment facts." *Id.* at 813.

Comparing the factual basis for B.C.'s assault claim with the harassment suffered by Cathie Williams in *Waffle House* reveals significant differences. First, there is a difference in the severity and frequency of the assailant's conduct. Here, B.C. alleges a single violent assault in which her assailant, a supervisor, exposed his genitalia while removing her clothing in an apparent attempt to force B.C. to participate in immediate and nonconsensual sexual activity. In *Waffle House*, Williams's coworker subjected her to six months of "boorish" behavior, including "offensive sexual comments," "wink[s]," and "unwelcome flirting." *Id.* at 799–800. On different occasions, the coworker put his hand down his pants, showed Williams a condom while laughing, and "often stared at her." *Id.* at 799. Additionally, Williams's harasser "held [Williams's] arms with his body pressed against her" when she was helping customers, "rub[bed] against her breasts with his arm" when she was trying to put dishes away, and "blocked her exit" on one occasion when Williams attempted to leave a supply room. *Id.* Although the alleged behavior in both instances is objectionable and reprehensible, what is clear is that the behavior that constituted the factual basis for Williams's claim in *Waffle House* included multiple incidents, some assaultive in nature, occurring over a lengthy period of time and resulting in the jury finding a hostile work environment sufficient to support Williams's successful TCHRA claim. *Id.* at 800. Waffle House's continued supervision and retention of Williams's harasser, however, constituted the factual basis for Williams's common law claims. *See id.* at 803. Therefore, we held that Williams's claims for negligent supervision and retention against Waffle House did not escape the TCHRA's administrative scheme

merely because Williams's harasser also made physical contact with her while creating a hostile work environment. *Id.*

Second, there is a difference in the nature of the claims themselves. Because she brought negligent supervision and retention claims, Williams needed to prove that Waffle House was negligent when it supervised and retained a known harasser. *See id.* at 805–06. Yet, the same needed to be proved for Williams to establish that Waffle House's tolerance of the harasser created a hostile work environment, a key element for Williams's TCHRA-based sexual harassment claim. *See id.* Critically, Williams potentially could have proven a hostile work environment without her harasser's assaultive conduct. *See id.* To prove negligence under Williams's common law theory of liability, however, Williams needed to prove that Waffle House's negligence was based on it supervising and retaining an employee responsible for committing an underlying tort, but sexual harassment is not a recognized common law tort in Texas. *Id.* at 811–12; *see also id.* at 801 n.3 ("A negligent supervision claim cannot be based solely upon an underlying claim of sexual harassment *per se*, because the effect would be to impose liability on employers for failing to prevent a harm that is not a cognizable injury under the common law." (quoting *Gonzales v. Willis*, 995 S.W.2d 729, 739–40 (Tex. App.–San Antonio 1999, no pet.)). As a result, some of Williams's harasser's behavior was repackaged for the assaultive components to provide Williams the means to secure a common law recovery. We determined, based on the evidence in the record, that the gravamen of Williams's claim was actually sexual harassment and not assault. *Id.* at 809. We then explained that a plaintiff's efforts to avoid the TCHRA by repackaging a claim's assaultive components disrupted the Legislature's intent because a clear repugnance existed between Williams's common law negligence claims and the claims created by the TCHRA's statutory scheme. *Id.* at 813.

Finally, there is a difference in the fundamental theory of employer liability. Here, B.C. claims that Steak N Shake is liable because one of its alleged vice principals committed an assault. Essentially, B.C. alleges that Steak N Shake steps into the shoes of the assailant and is, therefore, directly liable for her injury.[3] In *Waffle House*, Williams alleged the harassment was caused by her coworker. *Id.* at 798. To establish Waffle House's liability, as discussed above, Williams needed to show that Waffle House was negligent in continuing to supervise and retain an employ-

---

**3.** Steak N Shake argues that it will prevail on remand should we reverse the court of appeals' judgment because the record conclusively establishes that B.C.'s supervisor was not a Steak N Shake vice principal. *Cf. GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999) ("When actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself."). Although B.C. substantively disagrees with Steak N Shake on this issue, both parties assert that, upon reversal, the case should be remanded to the court of appeals to address whether the trial court's summary judgment can be affirmed on non-preemption grounds. We agree. Because we hold that the gravamen of B.C.'s claim is assault and there-

fore the TCHRA is not her exclusive remedy, *infra* at 284, and the court of appeals declined to address the other issues that may have constituted the basis of the trial court's summary judgment ruling, we remand the case to the court of appeals to address the issues in light of our disposition on TCHRA preemption. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) ("When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." (quoting *Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex. 1989))).

ee guilty of gender discrimination in the form of sexual harassment. *See id.* at 803 ("The issue is whether a common-law negligence action should lie against her *employer* for allowing the coworker's tortious or criminal conduct to occur ....."). Because proving Waffle House's negligence required the same factual predicate for proving a hostile work environment, we determined that the Legislature intended that such claims fall within the purview of the statutory scheme crafted to address gender-based discrimination. *Id.* at 802, 811–12.

We were mindful to note that assault claims against individual assailants do not fall within the scope of the TCHRA. *Id.* at 802–03. While civil remedies against individual assailants have long existed under Texas common law, the TCHRA is a statutory scheme created to provide a claim for individuals against their *employers* for tolerating or fostering a workplace that subjects their employees to discrimination in the form of harassment. *See id.* at 803. Steak N Shake points to TCHRA characteristics that can be viewed as favoring the employer (e.g., damage caps, predictability), the employee (e.g., a gender discrimination claim and remedy, affirmative injunctive relief, self-representation), and both (e.g., resolution of claims by conference, conciliation, and persuasion rather than litigation). *See id.* at 802–07 (comparing the TCHRA's scheme with common law negligent supervision and retention claims); TEX. LAB. CODE. §§ 21.207, .258, .2585(d). This balancing of interests by the Legislature is integral to the TCHRA, but the public policy it advances is wholly inapposite to claims against individual assailants. *See Waffle House*, 313 S.W.3d at 803. Thus, we concluded that the Legislature did not intend for individual assailants to receive, among other benefits, statutorily-capped damages and predictability for their employers simply because those as-

saults occurred in the workplace and not elsewhere. *See id.* We are not compelled to apply different reasoning when the employer, in legal effect, is the assailant.

Steak N Shake argues that we should apply our holding from *Waffle House* to the instant case because the factual predicate giving rise to B.C.'s assault claim could also give rise to a sexual harassment claim subject to the TCHRA's administrative scheme, thus preempting B.C.'s common law assault claim. *Waffle House*, however, can be distinguished based on the severity and frequency of the assailant's conduct, the nature of the plaintiff's claims, and the fundamental theory of potential employer liability. Applying our holding from *Waffle House* to the instant case would muddle its reasoning and obscure the purpose underlying the TCHRA—to create a remedy for Texans who suffer from workplace sexual harassment. Moreover, were we to apply *Waffle House* here, we would effectively rule that any action by an employer, no matter how egregious or severe, is subject to the TCHRA's administrative scheme so long as the conduct can be characterized as sexual harassment. Neither the TCHRA's text nor its purpose, nor our prior holdings interpreting the statute, requires such an extreme result.

### C. The Gravamen of B.C.'s Claim

Because our holding in *Waffle House* does not dictate the result in the case before us, we must determine, as we did in *Waffle House*, whether there exists a clear repugnance between the common law assault claim asserted here and a sexual harassment claim under the TCHRA. *See* 313 S.W.3d at 802. In *Waffle House*, we acknowledged that

[w]e have recognized that the legislative creation of a statutory remedy is not presumed to displace common-law remedies. To the contrary, abrogation of com-

mon-law claims is disfavored. However, we will construe the enactment of a statutory cause of action as abrogating a common-law claim if there exists 'a clear repugnance' between the two causes of action.

*Id.* (footnotes omitted). Additionally, should "a statute create[ ] a liability unknown to the common law, or deprive[ ] a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Smith v. Sewell,* 858 S.W.2d 350, 354 (Tex. 1993) (citing *Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex. 1983); *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex. 1969)); *see also Abutahoun v. Dow Chem. Co.,* 463 S.W.3d 42, 51 (Tex. 2015) ("Because abrogation is disfavored, we examine the statute's plain language for the Legislature's clear intention to replace a common law remedy with a statutory remedy, and we 'decline[ ] to construe statutes to deprive citizens of common-law rights unless the Legislature clearly expressed that intent.' " (alteration in original) (quoting *Satterfield,* 448 S.W.2d at 459)). The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties. *See e.g., CHRISTUS Health Gulf Coast v. Carswell,* 505 S.W.3d 528 534 (Tex. 2016) (instructing that in evaluating the type of claim, "we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded"); *City of Watauga v. Gordon,* 434 S.W.3d 586, 593 (Tex. 2014) (holding that because the gravamen of the complaint was a police officer's use of excessive force, the plaintiff's claim arose from battery rather than negligence); *Yamada v. Friend,* 335 S.W.3d 192, 196–97 (Tex. 2010) (evaluating "the gravamen or essence of a cause of action" and recognizing that "artful pleading and recasting of claims is not permitted"). Accordingly, we must determine whether the gravamen of B.C.'s claim is assault or harassment.[4]

When considered in the light most favorable to B.C., indulging every reasonable inference in her favor, the gravamen of B.C.'s claim is assault and not harassment. B.C. does not allege that her supervisor offered her a promotion or tied sexual favors to job performance.[5] Her deposition testimony does not establish that, absent the assault, her supervisor's actions had "the purpose or effect of unreasonably interfering with [B.C.'s] work performance or creating an intimidating, hostile, or offensive working environment." *Vinson,* 477

---

4. B.C. asks that we adopt the rule of law announced in *Brock v. United States,* 64 F.3d 1421 (9th Cir. 1995), that because assault constitutes a "highly personal violation beyond the meaning of discrimination," the TCHRA should not preempt her common law assault claim. *Id.* at 1424. We have held that "analogous federal statutes and the cases interpreting them guide our reading of the TCHRA," because the TCHRA's stated purpose is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Quantum,* 47 S.W.3d at 476; Tex. Lab. Code § 21.001(1). However, we are not required to adopt federal common law that interprets Title VII when we interpret an analogous state

law. *See Quantum,* 47 S.W.3d at 476. Because we hold that the gravamen of B.C.'s claim is assault, and therefore it is not preempted by the TCHRA, *infra* at 284, we need not consider extending *Brock* to the instant case.

5. While denying that any sexual activity or assault took place, Ventura alleges in his deposition testimony that B.C. has made allegations because she was denied advancement opportunities. Even if true, at most this would establish a motive for bringing a fraudulent claim against Ventura and cannot reasonably be viewed as Ventura offering employee benefits for sexual favors. *See Zeltwanger,* 144 S.W.3d at 445 n.5.

U.S. at 65, 106 S.Ct. 2399 (quoting the Equal Employment Opportunity Commission Guidelines, *see* 29 C.F.R. § 1604.11(a)(3) (2016)). B.C. denies that there was any discussion of a sexual nature or any actions by her supervisor that could be interpreted in a sexual way prior to the alleged bathroom assault. She does not allege that her supervisor's behavior was part of a pattern, nor did she witness or report any prior assaultive behavior by her supervisor or any other Steak N Shake manager.[6] In other words, she does not allege that Steak N Shake is liable for fostering or tolerating a hostile work environment, a wrong the TCHRA was intended to remedy. What she does allege is that on a single occasion her supervisor, who she claims was a Steak N Shake vice principal, without warning and without prior incident, sexually assaulted her at a Steak N Shake restaurant. Based on the evidence in the record, B.C. could prove a cognizable harassment claim under the TCHRA only by proving the assault. B.C.'s claim is not an effort to repackage harassment into assault so as to recover under the common law. The essence of B.C.'s claim *is* assault.

■ At oral argument, Steak N Shake's counsel argued that this distinction is essentially irrelevant because the TCHRA covers all sexual harassment in the workplace and, with respect to an employer, sexual assault is always sexual harassment. Even assuming, without deciding, that any workplace sexual assault also constitutes sexual harassment, we do not read the TCHRA to require preemption in this context. The Legislature is free, within its constitutional bounds, to alter an existing remedy or to create a new one. *See Abutahoun*, 463 S.W.3d at 51. Should the Legislature choose, it could amend the TCHRA to define sexual harassment in such a way that would cause it to provide the exclusive remedy for common law assault when the employer itself is the assailant. *See id.* (affirming that "statutes can modify or abrogate common law rules, but only when that was what the Legislature clearly intended" (quoting *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007))). Presently, however, the TCHRA's text indicates only that the Legislature intended to create an administrative scheme to combat workplace gender discrimination in the form of harassment, not the wholesale abrogation of the common law tort of assault when the assault occurs in the workplace. Therefore, where the gravamen of a plaintiff's claim is assault, absent the Legislature's proscription otherwise, a plaintiff must be able to pursue his or her common law claims, even when the alleged assault occurred in the workplace and the claims are against the employer.

Because no evidence suggests that the Legislature intended to abrogate common law assault when it enacted the TCHRA, we decline to interpret the statute as foreclosing a claim tailored to remedy the exact wrong that B.C. alleges caused her injury. B.C. is not attempting to shoehorn a harassment claim into an assault by focusing solely on one aspect of a longstanding pattern of harassment so as to

---

**6.** B.C. testified that her mother reported the incident to Steak N Shake for her by calling the employee hotline. In that report, according to B.C., her mother erroneously indicated that "this has happened to her before." B.C. relayed in her deposition testimony that she believes her mother was mistakenly referencing an incident months prior that B.C. did not witness, but that she was aware of, involving a different manager and different employee at the same Frisco, Texas, Steak N Shake restaurant. B.C. denied that she was assaulted or otherwise discriminated against by the manager allegedly involved in the separate and unrelated incident.

escape the Legislature's carefully crafted and balanced scheme to prevent gender-based discrimination, as was the case in *Waffle House*. Rather, on this record, after resolving all reasonable inferences in her favor, the essence of B.C.'s claim is assault. We hold that where the gravamen of a plaintiff's claim is assault, as it is here, the TCHRA does not foreclose the assault claim even when predicated on the same facts that would presumably constitute a sexual-harassment claim under the TCHRA.

## III. Conclusion

The Legislature's enactment of the TCHRA brought our state in line with the federal government in providing a remedy to parties who suffer indignities from workplace sexual harassment. Our jurisprudence since the TCHRA's enactment has sought to clarify this purpose while harmonizing the Legislature's aims with the common law. We have held, and continue to hold, that "[w]here the gravamen of a plaintiff's case is TCHRA-covered harassment, the Act forecloses common-law theories predicated on the same underlying sexual-harassment facts." *Waffle House*, 313 S.W.3d at 813. However, where the gravamen of the plaintiff's case is assault, we hold that the TCHRA does not preempt a common law assault claim. Because, on this record, the gravamen of B.C.'s claim is assault, we hold that Steak N Shake has not established, as a matter of law, that B.C.'s claim is preempted by the TCHRA. Accordingly, we reverse the judgment of the court of appeals and remand the case to the court of appeals for consideration of the remaining issues.