# Supreme Court of Texas

No. 24-0616

Cheryl Butler,

*Appellant*,

v.

Jennifer M. Collins; Steven C. Currall; Roy P. Anderson;
Julie P. Forrester; Harold Stanley; Paul Ward; and
Southern Methodist University,

*Appellees*

On Certified Question from the
United States Court of Appeals for the Fifth Circuit

**Argued December 3, 2024**

JUSTICE LEHRMANN delivered the opinion of the Court.

Chapter 21 of the Texas Labor Code authorizes suits against employers arising out of various forms of discrimination, harassment, and retaliation in the workplace. In *Waffle House, Inc. v. Williams*, we held that Chapter 21 provides the exclusive remedy against an employer when the "gravamen of a plaintiff's case" is Chapter 21-covered discrimination. 313 S.W.3d 796, 799 (Tex. 2010). The Fifth Circuit asks via certified question whether Chapter 21 similarly forecloses common

law causes of action—here, for defamation and fraud—against *another employee* when the claims are based on the same course of conduct. We answer that narrow question "no." Chapter 21 subjects only employers to statutory liability for covered discriminatory and retaliatory conduct and does not purport, either expressly or by implication, to immunize individuals from liability for their own tortious conduct merely because that conduct could also give rise to a Chapter 21 claim against a different defendant.

## I. Background

Southern Methodist University hired Cheryl Butler as an assistant law professor in 2011. After a mandatory third-year performance review, SMU renewed Butler's employment contract. Butler was eligible for tenure consideration in the 2015 fall semester.

At some point during that semester, Butler sought an extension of the tenure vote to a later semester due to illness. That request was denied; however, SMU later approved Butler's request for leave under the Family Medical Leave Act (FMLA) for the 2016 spring semester.

Butler's tenure committee, chaired by Professor Roy Anderson, submitted a report concluding that Butler met SMU's tenure standards for scholarship and service but not teaching. In January 2016, the law faculty voted not to recommend tenure to Butler. After Butler unsuccessfully appealed the negative recommendation to SMU Law School Dean Jennifer Collins and then to SMU's then-Provost Stephen Currall, the denial of Butler's tenure application became final. Butler completed the 2016–2017 "terminal year" of her contract, though she taught no classes during that academic year.

Butler sued SMU and several of its employees, including Anderson, Collins, Currall, Associate Provost Julie Forrester, Vice President for Executive Affairs Harold Stanley, and General Counsel Paul Ward.[1] Butler alleges that she was subjected to racially discriminatory tenure standards and a discriminatory tenure process and that SMU has a "systemic problem of tenure discrimination." She also alleges that she was denied tenure in retaliation for internal complaints she made about race, disability, and FMLA discrimination during the tenure process. Butler brought federal statutory claims for race discrimination—based on both a hostile work environment and denial of tenure—and retaliation under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, disability discrimination and retaliation under the Rehabilitation Act of 1973 and the Americans with Disabilities Act, violations of Title IX, and violations of the FMLA. She also brought corresponding state-law discrimination and retaliation claims against SMU under Texas Labor Code Chapter 21, as well as state common law claims for breach of contract and negligent supervision. Finally, she asserted claims for defamation, conspiracy to defame, and fraud against only the employee defendants.

Most pertinent to the certified question are the defamation and fraud claims against the employee defendants. Generally, the defamation claims are based on statements made in the report prepared

---

[1] The case was originally filed in state court but was removed to federal court. Although Butler initially named several additional SMU employees as defendants, the district court dismissed the claims against those defendants without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to effect service.

by Butler's tenure committee and in discussions leading up to and during the faculty meeting resulting in the negative tenure recommendation. For example, Butler alleges the tenure report falsely stated that she turned grades in late every semester, lied about being sick, was generally untruthful with her colleagues, and was "unfit" to be a lawyer or law professor. She also alleges she was falsely accused of lying in her application for FMLA leave, lying to her students about the reason for missed classes, and lying about experiencing discrimination at SMU. These false accusations, she asserts, were used as a basis to recommend that she be denied tenure. The related fraud claims are premised on the defendants' allegedly concealing the defamatory statements by withholding the tenure report, falsely denying that such statements were made, and using coercive tactics to ensure that other faculty members and witnesses did not come forward during Butler's investigation of her discrimination claims.[2]

---

[2] The connection between Butler's factual allegations and her fraud cause of action is not entirely clear. A fraud claim requires proof of a false, material representation (or failure to disclose information that the party has a duty to disclose) made with knowledge or reckless disregard of its falsity and with the intent that the plaintiff act upon it, as well as proof that the plaintiff acted in reliance on the false representation and thereby suffered injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (discussing the elements of a fraud cause of action); *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."). The allegations in Butler's complaint are vague as to the basis of a duty to disclose any withheld information or how Butler may have detrimentally relied on any false representations and suffered damages as a result. However, we need not engage in further discussion of the claim's merits because they are beyond the scope of the certified question and will not assist us in answering that question.

4

The defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of the negligent supervision claim against SMU as well as the FMLA, § 1981, and state common law claims asserted against the employee defendants. The district court denied the motion as to the FMLA and § 1981 claims but otherwise granted it. Citing *Waffle House*, 313 S.W.3d at 808–09, the district court held that Chapter 21 preempts the defamation and fraud claims against the employee defendants because "the gravamen of these claims is . . . for unlawful employment discrimination and retaliation, wrongs that [Chapter 21] is specifically designed to address." *Butler v. Collins*, No. 3:18-CV-00037-L, 2019 WL 13031414, at *3 (N.D. Tex. Mar. 31, 2019).[3] The defendants then filed a motion for summary judgment on all remaining claims. The district court granted the motion and dismissed those claims with prejudice. *Butler v. Collins*, No. 3:18-CV-00037-E, 2023 WL 318472, at *27 (N.D. Tex. Jan. 19, 2023). Butler appealed.

The issue presented in this Court pertains to the district court's dismissal of Butler's defamation and fraud claims against the employee defendants on preemption grounds. Given the lack of controlling case law from the Court on Chapter 21's preemptive reach with respect to claims asserted against coworkers for workplace misconduct, the Fifth Circuit certified the following question:

> Does [Chapter 21] preempt a plaintiff-employee's common-law defamation and/or fraud claims against

---

[3] The court held that Butler abandoned her negligent-supervision claim against SMU by failing to respond to the motion to dismiss that claim. 2019 WL 13031414, at *4.

5

another employee to the extent that the claims are based on the same course of conduct as discrimination and/or retaliation claims asserted against the plaintiff's employer?

*Butler v. Collins*, No. 23-10072, 2024 WL 3633698, at *6 (5th Cir. Aug. 2, 2024). We accepted the question. TEX. CONST. art. V, § 3-c (conferring jurisdiction on this Court "to answer questions of state law certified from a federal appellate court").

## II. Analysis

The Fifth Circuit asks whether Chapter 21 forecloses certain common law claims predicated on conduct that can also give rise to a Chapter 21 claim. Abrogation of a common law right "is disfavored" and requires "a clear repugnance between the common law and a statutory cause of action." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015). In other words, the statute's plain language must demonstrate, either expressly or by necessary implication, "the Legislature's clear intention to replace a common law remedy with a statutory remedy."[4]

---

[4] We have often used the term "abrogate" in describing the effect of a statute that deprives a person of a common law right. *E.g.*, *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017); *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000). We have also occasionally used the term "preempt" in the same way. *E.g.*, *Waffle House*, 313 S.W.3d at 799. The Legislature similarly has used both terms. *See, e.g.*, TEX. BUS. ORGS. CODE § 21.224 ("The liability of a holder, beneficial owner, or subscriber of shares of a corporation . . . for an obligation that is limited by Section 21.223 is exclusive and preempts any other liability imposed for that obligation under common law or otherwise."); TEX. CIV. PRAC. & REM. CODE § 173.001 ("The purpose of this chapter is to abrogate the common law arbitration rule prohibiting specific enforcement of executory arbitration agreements."). The United States Supreme Court employs the term "displace" in evaluating whether a federal

6

*Id.*; *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017); *see also B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017) ("[S]hould 'a statute create[] a liability unknown to the common law, or deprive[] a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.'" (second and third alterations in original) (quoting *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993))).

Chapter 21, aptly titled "Employment Discrimination," is a "comprehensive fair employment practices act and remedial scheme, modeled after Title VII of the federal Civil Rights Act of 1964, that provides the framework for employment discrimination claims in Texas." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex.

---

statute operates to the exclusion of federal common law. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) (holding that "the Clean Air Act and the EPA actions it authorizes displace any federal common-law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired powerplants"). The Fifth Circuit, presumably based on our terminology in *Waffle House*, phrased the certified question before us as one about preemption.

We point out these varying labels to be clear about the principle we have been asked to apply. "Preemption" typically refers to something entirely different: the constitutional principles that federal law supplants inconsistent state law and state law supplants inconsistent local law. Federal preemption of state law is grounded in the U.S. Constitution's Supremacy Clause, *see Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex. 2003) (citing U.S. CONST. art. VI, cl. 2), while state preemption of local law is grounded in the Texas Constitution's express prohibition against city ordinances inconsistent with state statutes, *see City of Laredo v. Laredo Merchs. Ass'n*, 550 S.W.3d 586, 589 (Tex. 2018) (citing TEX. CONST. art. XI, § 5(a)). By contrast, here we address the relationship between state statutory law and state common law, applying a distinct standard to this distinct principle. *See Cash Am. Int'l*, 35 S.W.3d at 16; *Forest Oil*, 518 S.W.3d at 428.

7

2012) (internal citation omitted). Broadly speaking, Chapter 21 prohibits an "employer" from discriminating against an individual "because of race, color, disability, religion, sex, national origin, or age" and from retaliating or discriminating against a person who opposes a discriminatory practice. TEX. LAB. CODE §§ 21.051, .055.[5] Chapter 21 creates a cause of action against an employer who engages in such prohibited conduct; importantly, however, it does not subject individual employees to personal liability. *E.g.*, *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under [Chapter 21]."); *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App.—Austin 1992, no writ) ("[Chapter 21's predecessor] does not create a cause of action against supervisors or individual employees."); *see also, e.g.*, *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404–05 (6th Cir. 1997) (agreeing with the majority of circuits that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII" and an analogous state statutory scheme).[6]

---

[5] Though not relevant here, Chapter 21 also prohibits employment agencies and labor organizations from engaging in discriminatory and retaliatory practices. TEX. LAB. CODE §§ 21.052–.053, .055.

[6] "Employer" is defined as:

(A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year;

As we discussed in *Waffle House*, Chapter 21's framework for addressing discriminatory and retaliatory employment practices incorporates an exhaustion-of-administrative-remedies requirement, a specific timetable for calculating the statute of limitations, particular substantive elements, "unique" affirmative defenses, and "unique" remedies, including "injunctive remedies with no common-law counterpart" and capped damages. 313 S.W.3d at 804–07. In light of that "comprehensive remedial scheme," we held that a plaintiff may not recover damages in negligence from her employer for harassment covered by Chapter 21. *Id.* at 798–99. That is, we held that Chapter 21, "the Legislature's specific and tailored anti-harassment remedy," is exclusive when the "gravamen of a plaintiff's case" is Chapter 21-covered discrimination. *Id.* at 799; *see also Steak N Shake*, 512 S.W.3d at 283 ("The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties."). We

_____

(B) an agent of a person described by Paragraph (A);

(C) an individual elected to public office in this state or a political subdivision of this state; or

(D) a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.

TEX. LAB. CODE § 21.002(8). As discussed, state and federal courts have not viewed the inclusion of the word "agent" in the definition (in both Chapter 21 and Title VII) to impose liability on an individual who does not otherwise qualify as an employer. *See, e.g.*, *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 580 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("[A] Title VII suit against an employee is actually a suit against the [employer] corporation.").

explained that allowing recovery from an employer on a tort claim "predicated on the same conduct that underl[ies a Chapter 21] claim . . . would collide with the elaborately crafted statutory scheme." *Waffle House*, 313 S.W.3d at 803–04.[7]

*Waffle House* thus instructs that Chapter 21 abrogates a plaintiff-employee's common law claims against *an employer* to the extent that the claims are based on the same course of conduct as discrimination or retaliation claims against that employer.[8] But, after *Waffle House*, courts of appeals and federal district courts are divided on Chapter 21's impact on claims against *employees*. Some courts have held that Chapter 21 abrogates common law claims against both employers and other employees when the gravamen of the complaint is discrimination or retaliation.[9] Other courts, relying on Chapter 21's

---

[7] Chapter 21 forecloses not only common law claims arising out of the same conduct, but other statutory claims as well. *See City of Waco v. Lopez*, 259 S.W.3d 147, 155 (Tex. 2008) (holding that the plaintiff, a city employee, could not simultaneously seek relief against his employer under both Chapter 21 and the Whistleblower Act because Chapter 21 "provides the exclusive state statutory remedy for public employees alleging retaliation arising from activities protected under [that statute]").

[8] One of Butler's arguments in this Court, which she did not raise in either the district court or the Fifth Circuit, is that *Waffle House* was wrongly decided and should be overruled. We disagree and decline the invitation to revisit that opinion.

[9] *See, e.g.*, *Friedrichsen v. Rodriguez*, No. 14-19-00850-CV, 2021 WL 4957330, at *7 (Tex. App.—Houston [14th Dist.] Oct. 26, 2021, no pet.) (holding that Chapter 21 foreclosed defamation claims against both an employer and other employees based on allegations that, motivated by the plaintiff's age, they fabricated an accusation against the plaintiff and used it to terminate his employment); *Woods v. Cmtys. in Sch. Se. Tex.*, No. 09-14-00021-CV, 2015 WL

10

limited applicability to employers, have held that Chapter 21 does not foreclose common law claims against other employees, regardless of whether the underlying facts are entwined.[10]

The employee defendants advocate the former approach: Chapter 21 displaces common law claims against both employers *and* employees when the gravamen of the complaint is discrimination or retaliation covered by the statute.[11]  Holding otherwise, the defendants assert, would allow a plaintiff to sidestep the statute's requirements and limitations by engaging in artful pleading to reframe a dispute over an employer's alleged discriminatory and retaliatory practices as a tort claim against supervisors or individual employees.  *Cf. Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) ("It is well settled

---

2414260, at \*10 (Tex. App.—Beaumont May 21, 2015, no pet.) (rejecting plaintiffs' argument that Chapter 21 does not abrogate claims against another employee).

[10] *See, e.g.*, *Garcia v. Shell Oil Co.*, 355 S.W.3d 768, 778 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that because Chapter 21 claims cannot be brought against individuals, the statute does not abrogate common law claims against individual employees); *Patton v. Adesa Tex., Inc.*, 985 F. Supp. 2d 818, 822 (N.D. Tex. 2013) (applying Texas law) (holding that *Waffle House* did not bar the plaintiff from asserting intentional torts, including defamation, against individual employees based on conduct forming the basis of a Chapter 21 claim against an employer).

[11] The parties disagree on the extent to which Butler's defamation and fraud claims against the employee defendants are in fact "based on the same course of conduct" as her discrimination claims against SMU.  That dispute is irrelevant to the certified question, which asks whether, as a legal matter, Chapter 21 preempts defamation and fraud claims against another employee that *are* based on the same course of conduct as discrimination claims against an employer.

that a health care liability claim cannot be recast as another cause of action to avoid the requirements of the [Texas Medical Liability Act].").

The employee defendants further argue that common law claims against employees based on the same course of conduct as Chapter 21 claims are just as repugnant to the statute's purpose as common law claims against employers, despite the fact that Chapter 21 does not impose individual liability on employees. They contend that the Legislature chose to impose liability under Chapter 21 against supervisors and managers "in their official capacities" but not their individual capacities and chose not to impose liability on other employees in any capacity. Thus, they argue, allowing common law claims against those employees individually upsets the balance of interests the Legislature struck.

As an initial matter, we note that to the extent Chapter 21 claims may be pursued against a supervisory employee in his "official capacity"—an issue on which we need not opine[12]—a claim against an employee in his official capacity is, for all intents and purposes, a claim against the employer. *See Franka v. Velasquez*, 332 S.W.3d 367, 382 n.68 (Tex. 2011) (noting that, absent allegations of ultra vires conduct,

---

[12] Federal jurisprudence on this issue with respect to Title VII is a bit muddled. *See, e.g.*, *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys Inc.*, 298 F.3d 434, 449 (5th Cir. 2002) ("[A] plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity."). We have found no Texas cases discussing liability of a private employee in his "official" capacity. As discussed, however, Texas courts uniformly hold that employees are not individually liable under Chapter 21.

a suit against a governmental entity's employee in his official capacity is a suit against the entity "in all respects other than name" (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("[A] Title VII suit against an employee [in his official capacity] is actually a suit against the corporation."). In other words, as discussed, Chapter 21 imposes liability for covered conduct on employers, not employees. *See* TEX. LAB. CODE § 21.051 ("An *employer* commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the *employer* . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." (emphases added)).

Turning to the substance of the certified question, Chapter 21's applicability to employers only and our reasoning in *Waffle House* lead us to conclude that the statute does not deprive a person of longstanding common law claims against other employees who engage in tortious workplace conduct.[13] In *Waffle House*, the plaintiff was repeatedly

---

[13] Well before *Waffle House*, we held that a plaintiff may not recover against either an employer or another employee on a claim for intentional infliction of emotional distress when the gravamen of the complaint is conduct covered by Chapter 21. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (citing *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). That holding, however, was based not on abrogation principles "but on the nature of the IIED tort itself." *Zeltwanger*, 144 S.W.3d at 451 (Hecht, J., concurring). IIED is a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the

13

subjected to offensive, sexually motivated comments and behavior from a coworker. 313 S.W.3d at 799. When the harassment continued despite complaints to management, the plaintiff quit and sued her employer, Waffle House, for sexual discrimination (hostile work environment) under Chapter 21 and for negligent supervision and retention of the harassing coworker. *Id.* at 799–800. She also sued the coworker for common law battery but nonsuited him before trial. *Id.* at 800. In holding that Chapter 21 abrogated the negligent-supervision claim against Waffle House, we emphasized that

> [t]he issue before us . . . is not whether [the plaintiff] has a viable tort claim against a *coworker*. The issue is whether a common-law negligence action should lie against her *employer* for allowing the coworker's tortious or criminal conduct to occur, or whether, instead, a statutory regime comprehensively addressing employer-employee relations in this context should exclusively govern.

*Id.* at 803. We explicitly stated that our decision did *not* "bar a tort claim against the harasser/assailant individually." *Id.* at 799.

Our subsequent opinion in *Steak N Shake*, in which we held that Chapter 21 did not abrogate an assault claim against an employer arising out of a single incident in which the plaintiff was sexually assaulted by a supervisor,[14] also highlighted this distinction. 512

---

victim has *no* other recognized theory of redress." *Id.* at 447 (emphasis added). Because our holdings in *Creditwatch* and *Zeltwanger* are limited to and rely on the nature of IIED claims, they do not inform the answer to the question before us.

[14] As in *Waffle House*, the plaintiff in *Steak N Shake* nonsuited her claims against the employee who assaulted her. 512 S.W.3d at 279. The

S.W.3d at 277. We again underscored that the issue in *Waffle House* involved abrogation of common law claims against an employer, not a coworker. *Id.* at 280. We further explained:

> We were mindful to note [in *Waffle House*] that assault claims against individual assailants do not fall within the scope of [Chapter 21]. While civil remedies against individual assailants have long existed under Texas common law, [Chapter 21] is a statutory scheme created to provide a claim for individuals against their *employers* for tolerating or fostering a workplace that subjects their employees to discrimination in the form of harassment. . . . This balancing of interests by the Legislature is integral to [Chapter 21], but the public policy it advances is wholly inapposite to claims against individual assailants.

*Id.* at 282.

Just as assault claims against individual assailants do not fall within the scope of Chapter 21, neither do defamation and fraud claims against individuals who commit those torts. And just as civil remedies against individual assailants have long existed under Texas common law, so have civil remedies long existed against individuals who defame others and commit fraud, regardless of motivation. The "repugnance" between the Chapter 21 claim and the common law claim at issue in *Waffle House* was premised on the Legislature's enactment of a comprehensive regime regarding *employer* liability for discrimination. If *Waffle House* does not, as we said, bar a tort claim against a "harasser/assailant individually," 313 S.W.3d at 799, we fail to see how

---

common law assault claim against the employer was based on allegations that it was directly responsible for the tort because the assaulting supervisor was acting as a vice principal of the company. *Id.* at 278.

15

it would bar a tort claim against a "defamer/defrauder individually." Of course, the plaintiff must bring claims cognizable under the common law. There is no common law cause of action for workplace discrimination or retaliation, so when that is all the plaintiff substantively asserts, Chapter 21 remains the exclusive remedy. *Id.* at 811–12.

Two additional points are worth making. First, as in any tort litigation, a plaintiff pursuing claims against multiple defendants may not "obtain[] more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). Thus, a plaintiff in Butler's position is not entitled to a double recovery merely because she may pursue both a Chapter 21 claim against her employer and recognized common law claims against individual coworkers for their own tortious conduct that allegedly caused the same injury. A plaintiff may allege that an employee's common law intentional tort and an employer's unlawful employment practices both contributed to an adverse employment action. But she may recover lost wages or back pay only once. Likewise, she may recover either future lost wages or reinstatement from the employer,[15] but not both.

Second, and pertinent to the lack of a common law claim for employment discrimination, we note that Butler's defamation claims present, at least to some extent, an alternative theory of causation than her Chapter 21 claims. Under Chapter 21, an award of damages and

---

[15] *See* TEX. LAB. CODE § 21.258 (providing for injunctive and equitable relief, including for reinstatement, promotion, and admission to special programs).

16

other relief is premised on the employer's engaging in an unlawful employment practice, such as terminating an individual's employment because of her race. TEX. LAB. CODE §§ 21.051, .258–.2585. In a defamation action, the alleged damages stem from the publication of a false, defamatory statement concerning the plaintiff to a third party. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Here, Butler alleges her tenure denial resulted from racial discrimination and retaliation and that her coworkers' defamatory statements were part of a scheme to cover up those real motivations. Thus, the extent to which Butler has claimed (even assuming the truth of her allegations) that the defamatory statements themselves were a legal cause of the employment-related injury—tenure denial—of which she complains is far from clear. But of course, the publication of false, defamatory statements can also give rise to other redressable injuries such as loss of reputation and mental anguish, irrespective of whether those statements were a motivating factor in the complained-of employment action.

We express no further opinion on the merits of Butler's state law claims, which are beyond the scope of the certified question.

### III. Conclusion

The availability of a Chapter 21 claim against an employer forecloses other entwined claims from being asserted against the same defendant, but it does not immunize other defendants, who are not subject to liability under Chapter 21, from liability under recognized common law causes of action for their own tortious conduct. Because no "clear repugnance" exists between common law defamation and fraud

17

claims against an employee and Chapter 21 claims against an employer, even when they are "based on the same course of conduct," we hold that Chapter 21 does not abrogate such claims.

We answer the Fifth Circuit's certified question "no."

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 23, 2025